·PEOPLE *v.* LOCKE.

1. ROBBERY—INTENT AN ESSENTIAL ELEMENT.

    ''Feloniously'' as used in statute defining, and providing penalty for, robbery armed implies intent to commit the crime of robbery or stealing, hence intent is a necessary element of that crime (3 Comp. Laws 1929, § 16722).

2. CRIMINAL LAW — ROBBERY — INTENT — EVIDENCE OF OTHER OFFENSES.

    Admission of testimony of police officer of conversation he had had with accused relative to latter's participation in hijacking plot which was never consummated *held*, reversible error in prosecution for robbery armed, where such testimony did not show any motive, intent or scheme to commit the crime now charged (3 Comp. Laws 1929, §§ 16722, 17320).

Appeal from Kent; Perkins (Willis B.), J. Submitted January 16, 1936. (Docket No. 116, Calendar No. 38,458.) Decided April 6, 1936.

William G. Locke was convicted of robbery armed. Reversed and new trial granted.

*Earl W. Munshaw, Julius J. Herscher* and *Seth R. Bidwell,* for appellant.

*David E. Crowley,.* Attorney General, *Bartel J. Jonkman,* Prosecuting Attorney, and *Menso R. Bolt,* Assistant Prosecuting Attorney, for the people.

Edward M. Sharpe, J. Respondent was convicted on the charge of having on the 12th day of August, 1931, assaulted and robbed one Almond Foster in his grocery store of the sum of $7, and that at the time of committing said assault and robbery he was armed with a dangerous weapon and intended to kill or maim if resisted. The defense was an alibi.

It is the claim of the people that while respondent did not actually commit the robbery himself, yet he was a participant in that he planned the robbery, furnished the guns for the holdup, and waited outside in an automobile while the robbery was committed. When the cause came on for trial the respondent did not take the stand and testify and the people had to rely largely upon the testimony of three convicts, two of whom were confessed perjurers.

The respondent claims error in the admission of the testimony of Frank O'Malley, a detective connected with the Grand Rapids police force, relating to a conversation he had with the respondent after respondent's arrest.

"*Q.* Will you tell the jury the conversation you had with Mr. Locke.

"*A.* I told Mr. Locke he was charged with a holdup that happened on the 12th day of August, 1931. I asked him what he knew about it and he said he didn't know anything about it. He turned to me and said, 'O'Malley, you don't think I am a holdup man, do you?' And I said, 'I wasn't there, I don't know.' I said, 'I don't know, you went out with a man by the name of —— did I say Bill, you went out with a man by the name of Jim Westrate and Dever and picked up another man by the name of Lapham out in the country some time ago with the intention of hijacking a man,' and I said, 'is that true?' And he said 'yes, I did, but,' he said, 'we didn't go to the man's place.' "

Section 17320, 3 Comp. Laws 1929, provides in part that:

"In any criminal case where defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

The interpretation of this statute has been the subject of much controversy in the courts of this State. In *People* v. *Dean*, 253 Mich. 434, the defendant was charged with the commission of an act of gross indecency with a 17-year old boy. During the trial of the cause the prosecution was permitted to prove the commission of similar acts by the defendant with several other boys. We said:

"The only apparent reasoning on which this testimony can be said to be relevant is that it tends to establish a disposition on the part of the defendant to commit such an act. If admissible for that purpose, other larcenies might be proven in a case where a man was charged with that offense, and other assaults, bigamies, rapes, etc., in like cases.

"That the defendant committed similar offenses with other boys has no direct tendency to show that he committed that with which he is charged, which had no connection with them. By the admission of such testimony, he is, in effect, called upon to defend against charges, without notice that he would be required to meet them. Where the charge involves conduct with the same person, as in the *Swift Case* [*People* v. *Swift*, 172 Mich. 473], he may, on the pre-

liminary examination, elicit the fact that such testimony will be relied upon by the prosecution and be prepared to meet it as best he may.

"The only purpose of submitting such proof in this case was to render it more probable in the minds of the jury that the defendant committed the offense with which he is charged, and on reason as well as authority it was not admissible for that purpose."

In *People* v. *Bolduc,* 260 Mich. 1, defendant was accused of assault with intent to do great bodily harm less than murder growing out of a gun fight with officers. A witness was permitted to testify that in Indianapolis on a prior occasion two companions who were arrested with the defendant for carrying weapons were discharged when defendant stated that the guns belonged to him. This court held that "the testimony had no relation to the crime here charged, nor was it competent as bearing on Cox's intent or motive, under 3 Comp. Laws 1929, § 17320."

In *People* v. *Wysocki,* 267 Mich. 52, defendant was charged with procuring another to kill his wife under color of a fake holdup. The evidence offered by the prosecution was of another fake holdup the result of which defendant made a claim against an insurance company and collected unlawfully. We said:

"Careful consideration of the record reveals nothing which in any tangible way connects the 'fake holdup' with the crime with which defendants were charged or with the alleged conspiracy between defendants to commit the crime. * * * The alleged 'fake holdup' was in no way incidental to the murder charged against these defendants, nor was it incidental to any fact or circumstance which was relevant or material to the offense charged."

In the case at bar the information was drawn under the following statute:

"If any person shall assault another, and shall feloniously rob, steal and take from his person any money or other property, or shall feloniously assault another with intent to rob or steal any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, with intent, if resisted, to kill or maim the person robbed or assaulted, * * * he shall be punished by imprisonment in the State prison for life or any number of years." 3 Comp. Laws 1929, § 16722.

The word "feloniously" as used in this statute implies intent to commit the crime of robbery or stealing. *People* v. *Quigley,* 217 Mich. 213; *State* v. *Fordham,* 13 N. D. 494 (101 N. W. 888); *State* v. *Rechnitz,* 20 Mont. 488 (52 Pac. 264). Consequently *intent* is a necessary element of the crime described in 3 Comp. Laws 1929, § 16722. The acts of respondent referred to in O'Malley's testimony did not result in the commission of any crime and at most tended to show a disposition to commit such an offense. We are unable to see how this purported act would show any motive, intent, or scheme to commit the crime with which defendant was charged.

The admission of this testimony constituted error, the conviction is reversed, and a new trial granted.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL, and POTTER, JJ., concurred. TOY, J., did not sit.