**Joseph E. MULLREED, Petitioner,**

v.

**William H. BANNAN, Warden, Southern Michigan State Prison, Respondent.**

**No. 14453.**

United States District Court

E. D. Michigan, S. D.

Jan. 18, 1956.

534

Jay M. Nolan, Detroit, Mich., for plaintiff.

Perry A. Maynard, Asst. Atty. Gen., for defendant.

PICARD, District Judge.

Joseph E. Mullreed, by his petition for habeas corpus, claims he is being deprived of his liberty without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States. He contends that he was sentenced to the Michigan State Prison at Jackson by the Circuit Court of that county, after having been denied the assistance of counsel.

### Findings of Fact

The facts are these: On or about June 7, 1954, petitioner and one Leland Passow, a friend, were in a tavern near Grass Lake, Michigan, having some drinks. After consuming several, they, or at least petitioner, engaged in a game of shuffleboard with the girl attendant, and then what followed, varies according to three stories although it is agreed that the attendant was struck with a chair and $40 stolen from the cash register by petitioner.

1. Petitioner's contention is that he did not remember exactly what happened because of his intoxication;

2. Respondent contends that petitioner, after striking the attendant with a chair while she was bent over the shuffleboard, followed this quickly with theft from the cash register; and

3. Passow claims petitioner struck the attendant who immediately ran out of the tavern and was not around when, later, Mullreed removed the money from the cash register.

About two hours after the robbery defendants were apprehended but because of their drunken condition were not brought before the municipal court until June 9th, where they waived examination and were bound over to the circuit.

On June 15, both petitioner and Passow were arraigned before the circuit court judge on an information charging them with "robbery armed," punishable by life imprisonment. Upon inquiry from the court as to whether or not they had counsel both defendants answered in the negative and both requested that counsel be appointed for them. The court made inquiry as to their financial circumstances and then said that he would "consider" their request for such appointment. Defendants stood mute and a plea of not guilty was entered.

One week later, June 22nd, both defendants were taken to Prosecutor Kenneth B. Johnson's office for an interview and informed that because he was not certain "whether a chair would be considered a dangerous weapon under Michigan law," he was going to add another count—"robbery unarmed"—a lesser offense. The Prosecutor said he explained all the penalties of the new charge and that both men agreed to plead guilty, petitioner having given his version of what had happened in detail to the Prosecutor and later, to the Court. At this time neither the Court nor the Prosecutor mentioned petitioner's prior request for counsel.

In connection with this meeting (June 22) the Prosecutor makes a rather unusual admission. He states that he told both defendants that there would be no jury in the Jackson County Circuit Court for three months; that unless defendants furnished bail they would have to stay in jail until the trial and that then they would be prosecuted under the "robbery armed" charge with the second count added.

Hearing this both defendants agreed to plead guilty to the second count but when they were taken before the court, Passow renounced his earlier decision while petitioner held fast and pleaded guilty to "robbery unarmed." It must be remembered that the information then consisted of two counts—one to which petitioner had stood mute and demanded counsel; and the other, the lesser offense, to which petitioner pleaded guilty.

The record further shows that petitioner stated to the court that his plea was free, voluntary and not induced by anyone but when he was questioned as to what transpired at the time of the robbery he replied, "I had been drinking quite a bit, sir, and I don't remember much about it." He admitted he had struck the barmaid but when the court asked if this was for the purpose of taking the money, petitioner replied that he didn't know.

The court accepted his plea of guilty and on June 30, petitioner received a sentence of ten to fifteen years in the state prison. No disposition was made of Passow at the time but later he obtained counsel, went before a different judge and was sentenced to sixty days.

At no time during any of the proceedings did petitioner have benefit of counsel although Michigan Court Rule 35-A provides as follows:

"Sec. 1. Arraignment. If the accused is not represented by counsel upon arraignment, before he is required to plead the court shall advise the accused that he is entitled to a trial by jury and to have counsel, and that in case he is financially unable to provide counsel the court will, if accused so requests, appoint counsel for him. * * *"

While conceding that not every refusal or failure to appoint counsel in state court criminal proceedings amounts to denial of due process of law, nevertheless, petitioner's counsel insists that because of the complexities of the legal issues faced by Mullreed, he was prejudiced and at a serious disadvantage by reason of his not having counsel and that

failure of the court to make such appointment does amount to lack of due process under the Fourteenth Amendment to the Constitution. The Sixth Amendment which applies to only federal crimes and which directly provides that a defendant must have counsel in felony cases, is not involved.

### Conclusions of Law

This question of whether in felony cases defendant is entitled to have counsel of his own or assigned to him gratis has long been debated and a subject considered by many courts and many judges, out of which we believe there has emerged three main situations covered by three patterns that we can accept as being the majority law of the day.

All states, of course, (like the original thirteen colonies) do not require appointment of counsel in felony cases and evolution through English law to our present-day rule is most interesting because one is surprised to learn that in types of the highest and most serious crimes, there was a time in England when you were not entitled to counsel at all, while in the smaller crimes including misdemeanors, you were. That to us seemingly puts the cart before the horse. However, any surprise must be short-lived because there are several of our own states today such as Arkansas, Delaware, Kansas, Maine, Minnesota, Missouri, Nebraska, New Hampshire, Washington, Arizona, Colorado and Maryland which provide that the court need appoint counsel only in certain felony cases and convictions or pleas of guilty in those states by persons without counsel are respected by other courts unless in some rare instances the Fourteenth Amendment is deemed to have been violated. In fact, Justice Sutherland in the famous Scottsboro case, Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, herein later quoted, brushed aside any thought of the Supreme Court of the United States interfering with any final decision of the state law as determined by the Supreme Court of that particular state.

This brings us the first of the three situations and resulting patterns—

(a) The Supreme Court will not invoke the Fourteenth Amendment, even where the state law provides for the appointment of counsel, where the issue has been decided by the Supreme Court of that particular state.

In Powell v. Alabama, supra, 287 U.S. at page 52, 53 S.Ct. at page 58, the court said:

"With any error of the state court involving alleged contravention of the state statutes or Constitution we, of course, have nothing to do. The sole inquiry which we are permitted to make is whether the federal Constitution was contravened (Rogers v. Peck, 199 U.S. 425, 434, 26 S.Ct. 87, 50 L.Ed. 256; Hebert v. Louisiana, 272 U.S. 312, 316, 47 S.Ct. 103, 71 L.Ed. 270); and as to that, we confine ourselves, as already suggested, to the inquiry whether the defendants were in substance denied the right of counsel, and if so, whether such denial infringes the due process clause of the Fourteenth Amendment."

And later at pages 59, 60 of 287 U.S., at page 60 of 53 S.Ct., the court also said:

"The Constitution of Alabama * * * provides that in all criminal prosecutions the accused shall enjoy the right to have the assistance of counsel; and a state statute * * * requires the court in a capital case, where the defendant is unable to employ counsel, to appoint counsel for him. The state Supreme Court held that these provisions had not been infringed, and with that holding we are powerless to interfere. The question, however, which it is our duty, and within our power, to decide, is whether the denial of the assistance of counsel contravenes the due process clause of the Fourteenth Amendment to the Federal Constitution."

Admittedly in several cases, particularly Betts v. Brady, 316 U.S. 455, at page 463, 62 S.Ct. 1252, 86 L.Ed. 1595

the Supreme Court referring to the Scottsboro case indicated that it did not view with great favor state court action that denies assistance of counsel in face of laws of the state that require appointment of the same. And so our decision might be much easier herein if we could hold that because Rule 35–A governing the courts of the State of Michigan was ignored then, for that reason alone, petitioner's present request should be granted. But the authorities of the Supreme Court do not definitely follow this rule.

In the case at bar and without the help of counsel, petitioner asked leave to appeal to the Supreme Court of Michigan and evidently included therein notice to the Supreme Court that Rule 35–A had not been followed. But the Supreme Court of the State of Michigan denied his appeal without saying anything specifically about Rule 35–A. In fact the Supreme Court of Michigan gave no reasons at all for denying the appeal. We must take it for granted, therefore, that that court passed upon all the essentials of petitioner's application for appeal, and certiorari to the Supreme Court of the United States was denied.

■ At this point let us inject that although certiorari was denied, this does not mean that the Supreme Court has given an " 'expression of opinion upon the merits' ". Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 407, 97 L.Ed. 469. So it may be seen that we would consider this point raised by petitioner more fully if we did not have a clear and more definite issue that we believe is determinative.

(b) The second situation covered by a "pattern" is this:

If the punishment that may be received by defendant is capital or, "for life" in those states where they do not have capital punishment such as Michigan, it is generally held, that regardless of their respective laws, counsel should be assigned, before pleading, to any defendant so charged if that defendant is indigent, immature, inexperienced in court matters or for any other reason needs a lawyer to acquaint him with and protect his rights, or urged to hire his own counsel if he can.

We believe this phase is well stated in Powell v. Alabama, supra, 287 U.S. at page 71, 53 S.Ct. at page 65, by Justice Sutherland—

"All that it is necessary now to decide, as we do decide, is that in a capital case, where the defendant is unable to employ counsel, and is incapable adequately of making his own defense because of ignorance, feeble-mindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law; and that duty is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case."

■ (c) And here we come to the third phase and pattern, and, to this court the compelling reason for our decision since we believe it to be the final word as laid down by the Supreme Court of the United States. It is a slight variation from (b) above.

Whether the state requires or provides for appointment of counsel, the trial judge should make such an appointment for every defendant where the legal issues are complex or where the defendant, on a serious charge, is either of tender age, inexperienced in court matters, not entirely bright or for any other reason needs a lawyer to acquaint him with and protect his rights.

In the Scottsboro case, supra, the fact that the only relatives of defendants were at distant points and could not come to their succor was considered a reason for the Supreme Court reversal.

What were the facts in the case at bar?

1. Defendant was a man in his early thirties with a *limited education* who *never had had any real experience* with

the courts on a felony charge, although he had had a couple of brushes with the law.

2. He was confronted first with "robbery armed"—very serious in Michigan.

3. He was given the alternative of pleading guilty to "robbery unarmed" or standing trial for "robbery armed" while remaining in jail for three months. A polite method of coercion. This alone we believe is grounds for relief. Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859.

4. Then there were the several versions as to just how this whole affair happened. An alerted attorney would have asked: Were these two distinct offenses—first, the assault and battery on the barmaid, and second, after she left the tavern, the larceny from the cash register?

5. In response to a question from the court, petitioner answered that he didn't know "why" he committed the assault so the question of "intent"—necessary in a robbery conviction—should have been a question for a jury. At least the defendant didn't say he had any "intent" or that the assault had any connection with the robbery. A trained legal mind even at his sentencing might reasonably be expected to seize upon this flaw, either to ask for a trial or in mitigation of sentence.

■ 6. Admittedly petitioner was intoxicated when the offense was committed. In Michigan intent to rob is a necessary element of the crime of robbery. People v. Locke, 275 Mich. 333, 266 N.W. 370. While we recognize that intoxication is not a defense to crime, admittedly in some jurisdictions intoxication sufficient to prevent the forming of a felonious intent is a good defense. See 77 C.J.S., Robbery, § 31, p. 469. Was Michigan in this group?

7. In addition to the above, at the time of sentencing the state court seemingly took into consideration petitioner's prior record, which it now appears was either falsely or incorrectly prepared. In Townsend v. Burke, 334 U.S. 736, at pages 740, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690, the Supreme Court held that where a prisoner is sentenced on the "basis of assumptions concerning his criminal record which were materially untrue" and that person did not have benefit of counsel who could have directed that fact to the court's attention, such conviction cannot stand.

We discount any alleged sarcasm, bitterness or unfairness on the part of the court or the prosecutor. This was just one of those array of incidents that might happen to anyone. The fact remains, however, that petitioner never received the appointment of counsel in response to his request in the greater offense, and counsel which might have been of help to him was not even considered in the lesser offense.

In conclusion, we cannot refrain from observing that if the Prosecuting Attorney himself was confused as to what the charge should be then doesn't it stand to reason that the defendant must also have been somewhat confused?

It is our opinion that this man was badly in need of legal counsel.

We do not even remotely hold that the sentence given by another judge to co-defendant Passow is controlling but it does add some force to petitioner's claims since Passow had an attorney and got a much lighter sentence. Of course Passow's participation admittedly was not as great as petitioner's but we doubt if there was that much disparity between the nature of their acts.

Lest it be presumed also that we are holding the state court wrong in concluding that petitioner actually committed the crime of which he was accused, we make it clear that we simply insist that under the circumstances petitioner was unable to adequately protect himself, and that there might have been some question raised as to his guilt of the particular charge.

The case at bar falls squarely within the rulings of the United States Supreme Court in the following cases—Townsend v. Burke, supra; Williams v. Kaiser, 323

U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398; Tomkins v. Missouri, 323 U.S. 485, 65 S.Ct. 370, 89 L.Ed. 407; Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367; Wade v. Mayo, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647; Gibbs v. Burke, 337 U.S. 773, 69 S.Ct. 1247, 93 L.Ed. 1686; and Palmer v. Ashe, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154. See also Marino v. Ragen, 332 U.S. 561, 68 S.Ct. 240, 92 L.Ed. 170; De Meerleer v. Michigan, 329 U.S. 663, 67 S.Ct. 596, 91 L.Ed. 584; and Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61. For more recent decisions on the question see Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4; Massey v. Moore, 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135, and Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 76 S.Ct. 223.

Defendant has served almost two years but he has been battling steadily in the courts to gain his freedom. We believe he is entitled to it. Courts are expected to insure to every defendant the right to all protection that our Constitution guarantees.

The petition is granted and counsel for petitioner will submit the proper papers for signature to accomplish his client's release.