PEOPLE *v.* WILLIAMS.

1. CRIMINAL LAW—EVIDENCE — REPORT OF PSYCHOPATHIC CLINIC
—MENTAL CONDITION OF ACCUSED.
   In a prosecution in the recorder's court of the city of
   Detroit for larceny from a store, where the defense was
   want of sufficient mental capacity to commit the crime
   charged, a report by the director of a psychopathic clinic
   connected with said court as to defendant's mentality,
   *held*, not admissible as substantive evidence of defendant's
   mental condition.

2. SAME—EVIDENCE—REBUTTAL—PRESUMPTION.
   Where two physicians had testified on behalf of defend-
   ant that her mentality was so defective that she was in-
   capable of forming an intent to commit a crime, testimony
   in rebuttal by another physician was not open to the ob-
   jection that it should have been offered by the people
   in making out the main case, since they had a right to
   proceed on the presumption that defendant had mental
   capacity until there was some testimony in the case to the
   contrary.

3. APPEAL AND ERROR—SUPREME COURT TAKES RECORD AS MADE
IN COURT BELOW.
   The Supreme Court, on error, must take the record as
   made in the court below and pass upon the questions
   presented.

4. CRIMINAL LAW—TRIAL—ARGUMENT OF COUNSEL—COUNSEL MAY
NOT SUBSTITUTE HIS OPINION FOR EXPERT'S.
   Although none of the testimony of expert alienists as to
   defendant's defective mentality was admissible because
   of failure to lay the proper foundation therefor, where
   said testimony was admitted without objection on the part
   of the prosecutor, it was reversible error for him, in
   argument to the jury, to urge his opinion as against that
   of the alienists.

5. SAME—EVIDENCE—EXPERT TESTIMONY—ADMISSIBILITY.
   Expert opinion evidence is not admissible unless the

facts upon which the opinion was based are laid before the jury.

6. SAME—TRIAL—ARGUMENT OF COUNSEL.
 •  Argument of the prosecutor that expert alienists, in coming into court and testifying as to defendant's mental condition, prostituted themselves, *held*, reversible error.

7. SAME—TRIAL—INSTRUCTIONS AS TO BURDEN OF PROOF.
   The charge of the court upon the subject of the burden of showing the mental condition of defendant, *held*, somewhat confusing, which would have been avoided had the court given defendant's request to charge thereon.

Error to recorder's court of Detroit; Marsh, (Pliny W.), J.    Submitted April 14, 1922.    (Docket No. 124.)    Decided June 5, 1922.

Minnie Williams was convicted of larceny, and sentenced to imprisonment for not less than 2½ nor more than 5 years in the Detroit house of correction. Reversed.

*Thomas L. Dalton* (*Frederick P. Hempel,* of counsel), for appellant.

*Merlin Wiley,* Attorney General, *Paul W. Voorhies,* Prosecuting Attorney, and *Elton R. Nellis* and *Robert M. Toms,* Assistants Prosecuting Attorney, for the people.

WIEST, J.    Defendant was convicted of the crime of larceny from a store in the daytime.    While in a store she took two pairs of hose of the value of $4.20 from a counter, concealed the same about her person and walked out.    The act was witnessed by the store detective, who followed defendant to the street and arrested her.    The defense was want of sufficient mental capacity to commit the crime charged.

Connected with the recorder's court of Detroit is a psychopathic clinic with Dr. A. L. Jacoby as director, and when defendant was arrested her case was referred to Dr. Jacoby for examination and report.

She was examined and the following report filed in the case:

"In intelligence she shows herself definitely defective, with a mental age of 10 years 6 months and an intelligence quotient of 65. There is also present in her case signs of the organic type of deterioration probably the result of excesses in her life of immorality.

"I do not believe that she is the type of case who can be self supporting, and that if at large she will resort to petty crime to obtain her self support. There seems to be insufficient evidence to warrant her commitment as insane, and if she were sent to an infirmary, in all probability she would leave there, so that control would be lost over her. I would therefore recommend for her a prison sentence in order to obtain for her the necessary custodial care."

At the trial and during the presentation of the people's case, counsel for defendant offered this report in evidence, and upon objection it was excluded, but later, and after Dr. Jacoby had given his testimony, it was admitted without objection. Defendant claims there was error in excluding the report when it was first offered. The report was not admissible as substantive evidence of defendant's mental condition.

The defendant called two alienists who had examined her and they gave testimony in substance that they had spent an hour questioning her about simple facts, and noted her answers, demeanor and expression, and one was of the opinion she had the mind of a child not over 7 years of age, and the other that her mentality was below that of one 10 years of age, and both expressed the opinion that she had no conception of property rights, had loss of memory, was incapable of forming an intent to commit a crime because unable to distinguish between right and wrong, and one stated she had no resistance of will.

Dr. Jacoby testified in rebuttal that his examination of defendant revealed a mental age of 10 years and 6

months and a person with a mentality of 10 years and 6 months would be capable of forming a criminal intent with reference to the crime of larceny from a store in the daytime, and capable of distinguishing between right and wrong with reference to the crime of larceny. This testimony of Dr. Jacoby in rebuttal was objected to on the ground that it should have been offered by the people in making out the main case. There is no merit in this objection. Until there was some testimony in the case tending to show want of mental capacity to commit the crime the people had a right to proceed on the presumption that defendant had mental capacity.

Complaint is made of the closing argument of the prosecuting attorney relative to the testimony of the alienists. The record shows the following:

"They tell you she is insane. Now, I do not presume that any of you are alienists. I am not one myself, but I think it is a matter of common knowledge that insanity runs into degrees, and that the nature of insanity is variable. Some are specialists in one degree of insanity, or in one direction. I speak now with reference to alienists. I mean the person. It may be perfectly possible for any otherwise normal person to be afflicted with a degree of insanity on one particular subject. Now, these alienists in my mind, and I speak frankly—as far as I am concerned, prostitute themselves, when they come in here and divulge their knowledge in one specific direction.

"*Mr. Dalton:* Just a minute. Call the court.

"*Mr. Moll:* Your honor, I have remarked that the alienist who comes in here and divulges his knowledge in one particular direction, and takes an arbitrary position, prostitutes his knowledge, and my remark was objected to.

"*Mr. Dalton:* I would like to have it from the stenographer; when I made the objection I called for the court. I would like to have the sentence prior to that read.

(The statement read by the reporter.)

"*Mr. Dalton:* I objected to that statement, your honor, and I ask that it be stricken out.

"*The Court:* You said the word 'divulge' their knowledge?

"*Mr. Moll:* From a partisan point of view.

"*Mr. Dalton:* There isn't any partisan point of view, Both alienists testified innumerable times for the people.

"*The Court:* Well, I think counsel is entitled to a certain degree of latitude in commenting on the credibility and weight to be given the testimony of a witness. Now, I think, that with the qualification the prosecutor has now made, that remark is perhaps admissible as comment on the testimony; taken with that qualification.

"*Mr. Dalton:* Qualification that they prostitute themselves?

"*The Court:* No; they speak from a partisan standpoint.

"*Mr. Dalton:* I will take an exception.

"*Mr. Moll:* They don't give you the basis for their opinions. They don't open up the whole field—

"*Mr. Dalton:* Now, I object to that, your honor.

"*Mr. Moll:*—for your understanding.

"*Mr. Dalton:* Just a minute, Mr. Moll. I greatly regret having to interpose an objection here to the argument of counsel, but when he goes outside the latitude, I think I have a right to protect my client. I interpose an objection to that.

"*Mr. Moll:* Your honor, I feel convinced that this is a specially important case that gives me latitude, and in commenting on the testimony of so-called expert witnesses.

"*The Court:* I think counsel have the right to discuss the testimony of witnesses, the credibility or weight to be given to it.

"*Mr. Dalton:* That is what he personally thinks. He is giving his experience.

"*Mr. Moll:* All right, let the judge judge. My opinion is no better than yours.

"*Mr. Dalton:* You were not sworn as to your opinion. I object to that.

"*Mr. Moll:* You qualify me as a trial judge.

"*The Court:* Proceed.

"*Mr. Moll:* They come in here and they tell you the

results of one hour's investigation on the part of two alienists. They tell you that they—what they tell you is the result of a mental and physical examination. They don't tell you the tests applied for the purpose of the mental examination. They tell you, however, that they asked a few questions based on the life of the subject and from those questions they have arrived at the conclusion that she is insane. Now, tell you that she is insane and they have opened up that whole field of insanity, and what insight have they given you? Have they given any of the pros and cons? They give you in their opinion that she is insane, and they don't tell you in what direction she is insane. * * * They don't tell you whether or not that insanity takes on the form of moral perversion or propensity or any particular nature of crime, but they tell you she is insane, and they expect you from their wisdom to say that she is not capable of formulating a criminal intent to commit a crime of larceny. They treat you simply as cogs in the machine.

"*Mr. Dalton:* I object to that statement.

"*Mr. Moll:* They tell you in their wisdom—

"*Mr. Dalton:* Exception to that remark.

"*Mr. Moll:*—and they expect you to decide with reference to that case. It is for you to determine whether or not this defendant is capable of formulating the criminal intent. Now, you are going to be the sole judges of the proposition of whether or not Minnie Williams on that day in question had the mentality with which to formulate a criminal intent, and what these alienists, Ives, Polozker and Jacoby have told you is their opinion in each particular case, and their opinion is given you that you may determine through experts, and through the opinion of experts the question of mentality with reference to Minnie Williams. Now, you are the alienists in this case.

"*Mr. Dalton:* I object to that statement.

"*Mr. Moll:* You are going to determine just what her mental equipment was and whether or not that mental equipment was sufficient for her to formulate the intent to commit larceny. Now, I want to impress that point on you if I don't impress any other point. If she was mentally defective, it doesn't necessarily mean in my opinion—

"*Mr. Dalton:* I object to his opinion being stated here.

"*The Court:* Proceed.

"*Mr. Moll:* If she was mentally defective it doesn't necessarily imply that she was not capable of formulating an intent to commit larceny. Now, unless her insanity—if you are convinced that she is insane or mentally defective—take this particular angle, it has no bearing on this case, because whether or not she is insane on another subject has no possible bearing on whether or not she can formulate a criminal intent to commit larceny. Now, I give you that as my opinion, and act as an alienist.

"*Mr. Dalton:* That is objected to.

"*Mr. Moll:* And I tell you that your opinion with reference to her insanity and with reference to this case only is the opinion that must be accepted. If it were not for that fact, the case would be decided solely on any alienist or professed alienist that the defense might seek to bring in here for the purpose of airing their views.

"*Mr. Dalton:* I take exception to that statement.

\* \* \*

"*Mr. Moll:* Now, as I say, I don't feel that you have had the benefit of the entire knowledge of the two alienists introduced on the part of the defense. They have bitten a small bite of a very large subject.

"*Mr. Dalton:* Now, I object to that, your honor.

\* \* \*

"*Mr. Moll:* The only point in the whole argument with which you are interested, from which you can possibly base your verdict, is the fact of her insanity with reference to her capability of formulating a criminal intent, and that intent with reference to the commission of the crime of larceny. Now, I don't think that the matter is properly raised or the testimony of alienists properly introduced as a matter of defense. It is more or less a science that has to do with the care and the treatment of patients or convicts, if you please, after they have been committed.

"*Mr. Dalton:* I take an exception to that statement. Just a moment. I would like to have a ruling on that.

"*The Court:* Well, I don't see that—the testimony of experts is of course admissible for the purpose of

aiding and assisting a jury in arriving at a proper conclusion as to the elements in that case.

"*Mr. Moll:* I mean by my remarks, your honor—

"*Mr. Dalton:* I am just taking the remarks as he said them.

"*Mr. Moll:* You don't allow me to qualify it.

"*Mr. Dalton:* I don't need any qualification. I am protecting my client's interests, and I don't want any remarks against her that are prejudicial to my client. I am objecting to that, and I would like to have a ruling on that.

"*The Court:* I think there is a basis for objection in view of the fact that the remark might be subject to a double interpretation. If the conclusion arrived at from the statement was that that is the only purpose for which alienists would properly be used, of course that would not be proper here, but it equally would be interpreted the other way. Subject to interpretation as I have said, I think it would be a proper remark. However, I think the counsel might use a little more specific language.

"*Mr. Moll:* However, your honor, I don't wish to convey that meaning, but I say this whole subject as has been dwelt upon on the part of the defense as a part of the rebuttal in this case, has in my mind to do more or less with a new science which will be developed and not with any particular bearing on this case.

"*Mr. Dalton:* I object to that statement."

None of the testimony of the experts, including Dr. Jacoby, was admissible had the rules of evidence been observed. We must, however, take the record as made in the court below and pass upon the questions presented.

The prosecuting attorney should not have been allowed to urge his opinion to the jury, as against that of the alienists, and it was reversible error to permit him to do so over the objection of counsel for defendant.

It is strange that in a case involving the life and history of defendant relative to the deterioration of her mind, and her habits, character, morbid propensity

to purloin goods and want of sense of right and wrong, there is not a word about her past, except a few statements of hearsay. Defendant was not a witness. The claimed departure of her mental power was not instantaneous, but, if true, the result of some cause and manifested through her acts and conduct for a considerable space of time, and necessarily open to observation and yet the record is barren of testimony giving the least insight into her past life. A timely objection by the prosecutor would have compelled the defense to go into such matters or abandon the defense made.

The argument of the prosecuting attorney was highly prejudicial and cannot be excused by anything in the record. His argument discloses that he was evidently aware of the rule excluding expert opinion evidence unless the facts upon which the opinion was based are laid before the jury, and yet he made no objection to the giving of such opinions by the alienists at the trial and did not bring out the facts on cross-examination, but waited until the closing argument and then urged the jury to pay no attention to the opinion evidence because the facts back of the opinions had not been given. If he had seasonably objected the defendant would have had a right and chance to comply with the rule and give the facts upon which the opinions rested. The testimony of the alienists being in the case it was reversible error for the prosecutor to urge the jury to reject the opinions of the alienists and take his opinion and to ask that this be done on the ground they had not been given the facts. It was a direct appeal to the jury to employ a rule of exclusion of testimony it was the duty of the prosecuting attorney to invoke when the opinion testimony was introduced in the case if he cared to have such rule applied.

In some States such expert opinion testimony is

218 Mich.—45.

admissible without first giving the facts, leaving the facts to be brought out on cross-examination. *People* v. *Faber,* 199 N. Y. 256 (92 N. E. 674, 20 Ann. Cas. 879). But in this State in both civil and criminal cases we hold fast to the rule requiring the facts to be given before the opinion and thereby enable the jury to know the basis of the opinion and determine the true facts before accepting the opinion. *Beaubien* v. *Cicotte,* 12 Mich. 459; *Kempsey* v. *McGinniss,* 21 Mich. 123; *Van Deusen* v. *Newcomer,* 40 Mich. 90; *Hitchcock* v. *Burgett,* 38 Mich. 501; *People* v. *Brown,* 53 Mich. 531; *People* v. *Bowen,* 165 Mich. 231; *White* v. *Bailey,* 10 Mich. 155.

Permitting the opinions of the alienists to be given, based upon observation, examination and information obtained out of court, and undisclosed to the jury, usurped the province of the jury and lent peculiar force to the appeal made by the prosecutor to the jury. The court should have sharply rebuked the prosecutor for stating:

"Now, these alienists, in my mind, and I speak frankly, as far as I am concerned, prostitute themselves, when they come in here and divulge their knowledge in one specific direction."

No part of this statement was permissible. The sting in the statement lay in the charge that the alienists in coming into court and giving opinion evidence relative to the result of their examination of the defendant prostituted themselves, and apparently this escaped the attention of the trial judge, when he was informed of what had happened evidently during his absence, for the record shows that after the statement and objection thereto Mr. Dalton said: "Just a minute. Call the court." The trial judge missed the point of the objection and rested his ruling upon the least objectionable portion thereof. The ruling left all the error in the case. There should have gone

forth an instruction, then and there, that it was not permissible for the jury to take the personal opinion of the prosecutor, and also that the alienists were not subject to the charge of prostituting themselves by coming in as witnesses and giving their opinion evidence relative to the mental condition of the accused.

We have examined the claimed error in the charge of the court to the jury.  The charge upon the subject of the burden of showing the mental condition of the defendant was somewhat confusing and would not have been so had the court given defendant's 10th request to charge.

We have examined the other errors alleged and they disclose no reversible error.

For the reasons pointed out the conviction of defendant is reversed and a new trial granted.

FELLOWS, C. J., and MCDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.