PEOPLE v BANKS

1. CRIMINAL LAW—EVIDENCE—POLICE REPORTS—NOTES—PAST RECOL-
LECTION RECORDED—CROSS-EXAMINATION.

A defendant was not denied an opportunity to adequately cross-
examine a police officer as to the circumstances surrounding
preparation of his report introduced as past recollection re-
corded when the defendant told the desk officer at the police
station that he had stabbed his wife, the officer took notes in
longhand and within 15 to 20 minutes typed a departmental
report from the notes, and then pursuant to practice the officer
discarded the original notes, because the report does not in-
volve a synopsis of protracted surveillances or the results of
detailed observations over a period of time, but an officer
reducing his notes to a simple one-page typewritten form
within minutes of his conversation with the defendant; this and
the officer's statement that the contents of his report were true
to the best of his knowledge tend to establish that the report
accurately stated the substance of defendant's conversation
with the police officer.

2. CRIMINAL LAW—EVIDENCE—POLICE REPORTS—NOTES—CROSS-EXAM-
INATION.

A desk officer at a police station who took notes in longhand of
defendant's conversation with him about defendant's stabbing
of his wife, typed a departmental report from the notes within
15 or 20 minutes, and pursuant to the practice at the time
discarded his original notes, could hardly be expected to antici-
pate a Supreme Court decision adopting a rule, assuming that
the rule applied to him, that reports of police officers must be

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 30 Am Jur 2d, Evidence §§ 877, 1090.
[3] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[4] 40 Am Jur 2d, Homicide §§ 417–419.
Admissibility of photograph of corpse in prosecution for homicide or
civil action for causing death. 73 ALR2d 769.
[5] 21 Am Jur 2d, Criminal Law § 53.
[6] 21 Am Jur 2d, Criminal Law §§ 50–53.

accompanied by the fragmentary notes from which each report was prepared if the reports are to be allowed in evidence.

3. CRIMINAL LAW—EVIDENCE—CHAIN OF CUSTODY—PRESERVING QUESTION.

An issue of whether the people in a criminal trial had established an adequate chain of custody prior to admission into evidence of certain clothing worn by the accused was not preserved for appellate review where defense counsel's objection to "the [police] witness testifying in regard to the clothing" as soon as the clothing was shown to the witness was properly overruled since the prosecutor had the right to introduce the proposed exhibits to rebut defense theories and had not yet had the opportunity to provide the foundation, and where, after the witness identified the clothing, defendant chose not to question the witness to elicit facts which might have supported the earlier general objection.

4. HOMICIDE—MURDER—EVIDENCE—PHOTOGRAPHS.

Admission into evidence at a trial for murder of several photographs depicting the victim was not error where the photographs were a chain in the link of evidence by which the people sought to illustrate the number, nature, and severity of the wounds as this evidence bore on a claim of self-defense; the trial judge properly exercised his discretion to impose reasonable limitations on the number of photographs so that the photos were not merely cumulative as to matters which were already adequately established by other evidence; and where the fact that the photos were not particularly pleasant did not render them so gruesome or prejudicial as to outweigh their substantial probative value.

5. CRIMINAL LAW—DEFENSES—INSANITY—EVIDENCE—OPINION TESTIMONY—QUESTION FOR JURY.

A jury in a criminal trial may reject expert as well as nonexpert opinion testimony tending to prove a defendant's sanity or insanity.

6. CRIMINAL LAW—DEFENSES—INSANITY—BURDEN OF PROOF.

Evidence which included testimony of a social worker who had recommended that defendant seek psychiatric help, testimony of defendant's physician, who was not a psychiatrist, that in his opinion the defendant did know right from wrong when he saw him professionally after a homicide, but would not undertake to answer whether the defendant could have made this distinction on the date of the killing, testimony of defendant's mother-

in-law that he seemed normal on the day before the crime, and testimony of the defendant from which the jury was entitled to draw reasonable inferences as to the sanity test was sufficient, if believed by the jury, to sustain the burden of proving the defendant sane beyond a reasonable doubt.

Appeal from Saginaw, Hazen R. Armstrong, J. Submitted Division 3 October 2, 1973, at Grand Rapids. (Docket No. 15495.) Decided November 29, 1973.

Joe T. Banks was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *E. Brady Denton,* Prosecuting Attorney, and *Daniel R. Connell,* Assistant Prosecuting Attorney, for the people.

*Roger L. Wotila,* Assistant State Appellate Defender, for defendant.

Before: HOLBROOK, P. J., and BASHARA and O'HARA,* JJ.

O'HARA, J. This is an appeal of right from defendant's jury conviction of second-degree murder. MCLA 750.317; MSA 28.549.

The record indicates that defendant, immediately after killing his spouse, went to the police station and told desk officer Joseph Raleigh that he had stabbed his wife and to have someone check on her at their home. During the course of his conversation with the defendant, Officer Raleigh took notes in longhand and within 15 to 20 minutes typed a departmental report from the notes. Pursuant to the then practice, he discarded

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

his original notes. The officer stated at trial that he had no present independent recollection of what defendant told him. The report was introduced as past recollection recorded. Defense counsel objected to the absence of the original notes. The argument is made on appeal that introduction of the report without the officer's fragmentary memorandum denied defendant the opportunity of "meaningful" cross-examination and was reversibly erroneous. *People v Rosborough,* 387 Mich 183; 195 NW2d 255 (1972).

At the outset we hold that defendant's reliance on *Rosborough* is ill-founded since that case is readily distinguishable on the facts from the case at bar. *Rosborough* involved a complex gambling conspiracy wherein the police necessarily made extensive surveillances over an extended period of time. The officers made fragmentary notes with respect to their observations. At the end of each day, they prepared a formal report based upon their notes and their recollection of the day's events. While the Supreme Court held it error to admit the reports as past recollection recorded in the absence of the fragmentary notes, the opinion of Justice ADAMS is principally concerned with possible discrepancies which might exist between the two sets of memoranda and the difficulty confronting a defendant who might wish to challenge the reports' accuracy without the availability of the original writings (particularly in view of the fact that the officers likely would have little actual recall of the countless observations at a point much later in time).

In the present case, the situation is far different. Here the report does not involve a synopsis of the protracted surveillances or the results of detailed observations over a period of time. Significantly,

the officer reduced his notes to a simple one page typewritten form within minutes of his conversation with the defendant. These considerations and the officer's statement that the contents of his report were true to the best of his knowledge tend to establish that the report accurately stated the substance of defendant's conversation with the police officer. Hence, we hold that defendant was not denied an opportunity to adequately cross-examine the officer as to the circumstances surrounding preparation of the report.

But assuming that distinguishing the cases factually were to be rejected by the Supreme Court should further appeal take place, we think the desk officer could hardly be expected to anticipate *Rosborough* adopting a rule contrary to that already established and followed in cases such as *People v Hobson,* 369 Mich 189; 119 NW2d 581 (1963), and *People v Gorka,* 381 Mich 515; 164 NW2d 30 (1969).

It is presumably this reliance factor on the prior rule by those in the field of law enforcement that underlies the refusal of the Supreme Court to give *Rosborough* retroactive application. For helpful annotations and case authority dealing with the troublesome issue of whether decisions announcing new rules will be given retroactive effect see *inter alia:* 22 L Ed 2d 821; 10 ALR3d 1371; *People v Whisenant,* 384 Mich 693; 187 NW2d 229 (1971); *Desist v United States,* 394 US 244; 89 S Ct 1030; 22 L Ed 2d 248 (1969), *reh den,* 395 US 931; 89 S Ct 1766; 23 L Ed 2d 251 (1969).

Defendant next claims that the people did not establish an adequate chain of custody prior to the admission of certain clothing worn by the accused when he went to the police station and reported the stabbing of his spouse.

The issue was not preserved for appellate review. As soon as the clothing was shown to the police witness, defense counsel objected to "the witness testifying in regard to the clothing". Since the prosecutor had the right to introduce the proposed exhibits to rebut defense theories of self-defense and insanity and had not yet had the opportunity to provide the foundation, the trial judge properly overruled the objection at that time. After the witness identified the clothing, defendant chose not to question the witness to elicit facts which might have supported the earlier general objection. Under these circumstances we find no reversible error.

Defendant next takes exception to the introduction of several black and white photographs depicting the victim and the disarray of the room where the body was found. On appeal, he argues that the photographs were not material or were at least cumulative. He also contends that the pictures were of an inflammatory character and this characteristic outweighed their probative value and hence they should not have been admitted.

The test is defined by the Supreme Court in recently released *People v Falkner,* 389 Mich 682, 685; 209 NW2d 193, 194 (1973).

"Recalling our discussion in *People v Eddington,* 387 Mich 551, 562–563; 198 NW2d 297 (1972), we must determine whether these photographs were 'substantially necessary or instructive to show material facts or conditions,' or merely 'calculated to excite passion and prejudice.' "

Some of the exhibits are photographs of the deceased taken at the hospital depicting chest wounds; two other exhibits were taken at the mortuary showing wounds to the deceased's back;

and finally several exhibits are photographs of the body showing its position in the room where the stabbing took place. The room was in shambles suggesting a violent struggle.

Based upon our review of the applicable case law and a careful examination of the photographs we are led to this three-fold conclusion.

(1) The photographs were a chain in the link of evidence by which the people sought to illustrate the number, nature, and severity of the wounds as this evidence bore on the claim of self-defense.

(2) The trial judge properly exercised his discretion to impose reasonable limitations on the number of photographs so that the photos were not merely cumulative as to matters which were already adequately established by other evidence.

(3) The fact that the photos were not particularly pleasant did not render them so gruesome or prejudicial as to outweigh their substantial probative value.

*Falkner, supra,* was a four to three decision by the Supreme Court as to the admissibility of the pictures in that case. The question of probative evidentiary value versus a claim that the photos offered were "merely calculated to excite passion and prejudice" is highly subjective and necessarily difficult of application. It calls for an evaluation of prosecutorial motive. We have read the record with extreme care in light of *Falkner.* It seems to us that they bore heavily on the visceral issue of the circumstances under which the stabbing took place as those circumstances were related to the claim of self-defense. Hence, we cannot assess them as irrelevant. Given their relevance the trial judge limited the number admitted thus negativing the claim they were cumulative only. We have attempted here to apply the *Falkner* majority test

to the best of our ability and we conclude the photographs did not offend against it.

As his final assignment of error defendant asserts that the prosecution did not meet its burden of proving defendant sane beyond a reasonable doubt at the time of the homicide.

The defendant brought forth testimony of two witnesses, a social worker and a licensed general physician, who had both recommended appellant seek psychiatric help. The social worker did not testify whether defendant knew right from wrong or was motivated by an irresistible impulse. The physician, who was not a psychiatrist, explicitly testified that in his opinion the defendant did know right from wrong when he saw him professionally. He would not undertake to answer whether defendant could have made this distinction on the date of the killing. There also was the opinion evidence of defendant's mother-in-law that he seemed normal on the day prior to the homicide. A sufficient foundation was laid for this opinion testimony. See the opinion of now Chief Justice KAVANAGH in *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969). Additionally, defendant took the stand and testified as to the facts surrounding the demise of his wife. The jury was entitled to draw reasonable inferences as to the sanity test from this testimony.

It is axiomatic that a jury may reject expert as well as nonexpert opinion testimony tending to prove a defendant's sanity or insanity. Considering all the facts the jury in this case could conclude he was sane beyond a reasonable doubt. The quantum of proof of sanity was based upon sufficient testimony which if believed by the jury would sustain the burden of proof on this issue beyond a reasonable doubt.

Affirmed.

All concurred.