PEOPLE v FISK

1. CRIMINAL LAW—DEFENSES—INSANITY—SPECIFIC INTENT—TRIER OF FACT.

The ultimate determination of sanity of a defendant and the existence of specific intent rests with the trier of fact, whether the court or a jury.

2. CRIMINAL LAW—DEFENSES—INSANITY—BURDEN OF PROOF—REASONABLE DOUBT.

A defendant is presumptively sane, but the presumption can be rebutted by offering evidence to the contrary; when this is done, the prosecution has the burden of persuading the trier of fact beyond a reasonable doubt of the defendant's sanity.

3. CRIMINAL LAW—DEFENSES—INSANITY—FACT FINDING.

Circumstances of a robbery can support a fact-finder's conclusion that a defendant was legally sane at the time he committed the robbery where a defendant's actions of masking his face and warning a service station attendant not to call the police show that at least cognitively he realized the wrongfulness of the act.

4. TRIAL—EVIDENCE—PSYCHIATRIC TEXTBOOK—CONSTITUTIONAL LAW —DUE PROCESS—CRIMINAL LAW.

Reference by a trial court to a statement appearing in a psychiatric textbook which was not offered as evidence is not so fundamentally unfair as to be a violation of due process where the court made the reference in its discussion of testimony by one of the expert witnesses and did not utilize the work as independent research to contradict the evidence.

5. ROBBERY—ARMED ROBBERY—SPECIFIC INTENT—GENERAL INTENT— INTOXICATION—INSANITY—EVIDENCE.

Larcenous intent is a necessary element of the offense of armed robbery, and evidence of intoxication and insanity may be

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 21 Am Jur 2d, Criminal Law § 53.
[2] 21 Am Jur 2d, Criminal Law § 52.
[4] 21 Am Jur 2d, Criminal Law §§ 69, 74.
[5] 67 Am Jur 2d, Robbery §§ 46, 55.

introduced to demonstrate that the defendant did not have the requisite specific intent; voluntary intoxication is not a defense to a general intent crime but it can be shown to negate specific intent.

Appeal from Wexford, William R. Peterson, J. Submitted June 3, 1975, at Lansing. (Docket No. 20883.) Decided July 22, 1975.

Richard G. Fisk was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Edward Tenhouten,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Edward R. Wilson,* Director, by *Dennis M. Powers,* Special Assistant Attorney General, of counsel), for the people.

*Kenneth Lerner,* Assistant State Appellate Defender, for defendant.

Before: BASHARA, P. J., and J. H. GILLIS and M. F. CAVANAGH, JJ.

M. F. CAVANAGH, J. In a bench trial, the defendant was convicted of armed robbery, MCLA 750.529; MSA 28.797. The Wexford County Circuit Court Judge imposed a sentence of 20 to 40 years imprisonment.

After a night of heavy drinking, the defendant pulled into a service station in Wexford County. He pulled a gun on the station attendant and demanded money. He identified himself as a deputy sheriff but he soon put the gun away, and, without taking any money, he left. An hour later he returned wearing the same distinctive clothing but with masking tape wrapped around his head. This time the defendant successfully robbed the

station. He admonished the attendant not to call the police after he left because he would be watching from across the street. About 2 hours later, the defendant was arrested when he came to the station for the third time and asked for gasoline.

At trial the defendant pleaded insanity and contended that, because of his intoxication, he lacked the requisite specific intent to commit a robbery. Dr. Matthew Schiff, a psychiatrist at the Forensic Center, testified that the defendant was suffering from a depressive reaction, was unable to differentiate between right and wrong, and was probably acting under an irresistible impulse. Another psychiatrist, Dr. Edward Edmund, concluded that the defendant suffered from a sociopathic personality disorder and from "alcoholic psychosis" and that alcohol intake caused him to lose the willpower to resist the impulse to commit the crime. Dr. Edmund's diagnosis, however, was more tentative due to his limited opportunity to observe the defendant.

The prosecutor cross-examined both medical witnesses, but offered no rebuttal evidence on the issue of insanity. The trial court rejected the conclusions of the psychiatrists that the defendant was psychotic. He made the factual finding that the defendant, by voluntary intoxication, allowed his willpower to be weakened to the point that it permitted the commission of the offense. Further, he found beyond a reasonable doubt that the defendant's speech and behavior demonstrated his purposeful intent to rob the service station.

The prospect of sending a man who has obvious emotional problems to prison for 20 to 40 years prompts this Court to examine carefully the findings of fact and conclusions of law in this case. Having done so, we must affirm his conviction.

The knowledge and experience of psychiatrists can assist appreciably a fact-finder who gives their opinions due consideration, but the ultimate determination of sanity and the existence of specific intent rests with the trier of fact, whether court or jury. *People v Martin,* 386 Mich 407, 422; 192 NW2d 215 (1971), *cert den* 408 US 929; 92 S Ct 2505; 33 L Ed 2d 342 (1972). *People v Banks,* 50 Mich App 622, 629; 213 NW2d 817 (1973).

A defendant is presumptively sane, but this presumption can be rebutted by offering evidence to the contrary;[1] when this is done, the prosecution has the burden of persuading the trier of fact beyond a reasonable doubt of the defendant's sanity. *People v Livingston,* 57 Mich App 726, 732; 226 NW2d 704 (1975).

The prosecution discharged its burden in this case by limited cross-examination and by emphasizing the admitted limitations on the psychiatrists' conclusions. It is conceivable that in some cases the prosecution can effectively discharge its burden of proving the defendant's sanity by cross-examining the defense witnesses without offering additional rebuttal witnesses.

The trial court determined as fact-finder that the defendant knew that what he was doing was wrong and that he had the willpower to resist the

---

[1] *People v Stoddard,* 48 Mich App 440, 445–446; 210 NW2d 470 (1973), has held that the probative value of the presumption of sanity continues even after the defendant offers expert medical evidence of insanity. This contention appears questionable in light of the following statement in *People v Woody,* 380 Mich 332, 338; 157 NW2d 201 (1968):

"Despite the service of the notice of the defense of insanity, the defendant was presumed to be sane until evidence was introduced in his behalf to overcome the presumption."

*See also People v Eggleston,* 186 Mich 510, 514; 152 NW 944 (1915). We need not decide this question since the trial court expressly found that the prosecution had discharged its burden without the need to rely on the presumption.

wrongful act. See *People v Martin,* *supra,* 386
Mich 407, 418. Considering all of the circum-
stances of the case, we find these determinations
not to be clearly erroneous. GCR 1963, 517.1. The
circumstances of the robbery can support the con-
clusion of defendant's legal sanity. His actions of
masking his face and warning the attendant not to
call the police show that at least cognitively he
realized the wrongfulness of the act. Although the
defendant's willpower or "superego", as the psychi-
atrists termed it, was deleteriously affected, there
was evidence to support the court's conclusion that
this was a result of his voluntary intoxication.[2]

The defendant urges that the trial judge violated
due process by relying upon the definition of "psy-
chosis" from the *Diagnostic and Statistical Manual
of Mental Disorders* of the American Psychiatric
Association. The prosecutor counters that the
court is entitled to recognize the publication as
authoritative and cites *Jones v Bloom,* 388 Mich
98, 118; 200 NW2d 196 (1972), to support that
proposition. *Jones,* however, only permitted, for
the purpose of cross-examination, the use of text-
books acknowledged as authoritative.

In this case, we perceive no constitutional error
in the use of the manual. It appears from the text
of the trial judge's opinion that this reference was
made in his discussion of the testimony by one of
the psychiatrists. He did not utilize the work as
independent research to contradict the evidence.

---

[2] "Temporary" insanity caused by voluntary intoxication has not
been accepted as a defense to a criminal act. *See* 8 ALR3d 1236, 1267.
There is probably little reality to the irrebuttable conclusion that a
pathological drinker, such as the present defendant, can successfully
resist the impulse to drink and then to commit an antisocial act. But
the policy consideration of the safety of the community requiring the
present rule remains a powerful countervailing force. *See People v
Garbutt,* 17 Mich 9, 19 (1868). On the state of this record, we cannot
conclude that a toxic psychosis induced by alcohol can exculpate the
defendant from criminal liability.

Under these circumstances, the reference to a statement appearing in a textbook which was not offered as evidence was not so fundamentally unfair as to be a violation of due process.

The final issue is whether the trial court's finding of specific·intent to commit a robbery is supported by the evidence. Larcenous intent is a necessary element of the offense of armed robbery. *People v Locke,* 275 Mich 333; 266 NW 370 (1936). And evidence of intoxication and insanity may be introduced to demonstrate that the defendant did not have the requisite intent. *People v Crittle,* 390 Mich 367; 212 NW2d 196 (1973). *People v Counts,* 318 Mich 45; 27 NW2d 338 (1947).

Defendant stresses the psychiatric testimony that the defendant lacked the capacity to form the intent. Capacity, of course, is relevant to the question of whether the defendant had the necessary *mens rea,* but the critical question is whether the defendant in fact possessed specific intent to commit the offense. *People v Crittle, supra,* 390 Mich 367, 371–372.

Voluntary intoxication is not a defense to a general intent crime, *People v Guillett,* 342 Mich 1, 5; 69 NW2d 140 (1955), but it can be shown to negative specific intent. *People v Kelley,* 21 Mich App 612, 618–619; 176 NW2d 435 (1970). See also Annotation, *Modern Status of the Rules as to Voluntary Intoxication as Defense to Criminal Charge,* 8 ALR3d 1236.

In this case, however, there was some evidence to support the proposition that the defendant specifically intended to commit the robbery. The circumstances of the evening tend to indicate that it was the defendant's purpose to hold up the service station. Hence, the trial court committed no error in finding the requisite larcenous intent.

Affirmed.