PEOPLE v SARGEANT

Opinion D. E. Holbrook, Jr., J.

1. CRIMINAL LAW—TRIAL—EVIDENCE—PRESUMPTION OF SANITY—DE-
   FENSE OF INSANITY—NOTICE.

   *A defendant is presumed to be sane from the beginning of a
   criminal trial until some evidence is introduced to the contrary
   and this presumption attaches to the defendant no matter what
   notice the prosecution has that the defendant will present an
   insanity defense.*

2. CRIMINAL LAW—PROSECUTION—SANITY—EVIDENCE—PRESUMPTION
   OF SANITY—BURDEN OF PROOF.

   *The prosecution is always required to prove the defendant sane
   beyond a reasonable doubt but, until some evidence is intro-
   duced to show that the defendant is insane, the presumption of
   sanity satisfies the prosecution's burden of proof.*

3. CRIMINAL LAW—PROSECUTION—EVIDENCE—SANITY.

   *The prosecution has a duty at a criminal trial not to introduce
   evidence on the issue of the defendant's sanity until after the
   defendant has introduced the issue.*

4. CRIMINAL LAW—POLICE OFFICERS—OPINION TESTIMONY—SANITY—
   CONFESSIONS—INFERENCES.

   *Statements at trial by police officers that a defendant appeared
   "normal" at the time of his arrest should not be considered as
   lay opinion testimony of sanity where the statements were
   necessary to establish the voluntariness of the defendant's
   confession which was to be subsequently offered, a fair reading*

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law § 70.
[3] 21 Am Jur 2d, Criminal Law §§ 64, 65.
   Investigation of present sanity to determine whether accused
   should be put, or continue, on trial. 142 ALR 961.
[4, 6, 7, 9–11, 14, 15] 31 Am Jur 2d, Expert and Opinion Evidence
   §§ 88, 92–94.
[5] 75 Am Jur 2d, Trial § 192 *et seq.*
[6] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[8, 12, 13] 5 Am Jur 2d, Appeal and Error §§ 901, 902.

*of the objectionable questions asked of the officers in the context of their testimony shows that the questions did not imply any opinions as to the defendant's sanity, and the trial court took pains to insure that the jury would not draw the wrong inferences from the officers' testimonies following the defendant's objection.*

5. TRIAL—COURTS—ATTORNEYS—OFFICER OF THE COURT—PRESUMPTIONS—IMPROPER QUESTIONS.

*The Court of Appeals will not presume that an attorney as an officer of the court will deliberately ask improper questions after he has been corrected by the trial court.*

6. CRIMINAL LAW—PROSECUTOR'S STATEMENT—SANITY—EXPERT WITNESSES—FAILURE TO OBJECT.

*The issue of the appropriateness of a prosecutor's statement that the jury should match up the testimony of the defendant's expert witnesses against the testimony of police officers who stated that defendant was "normal" was not properly before the Court of Appeals where the defendant failed to object to the statement at trial.*

## CONCURRENCE BY O'HARA, J.

7. WITNESSES—CRIMINAL LAW—OPINION TESTIMONY—SANITY.

A statement by a non-expert witness that the defendant in a criminal trial appeared "normal" to him at the time of his arrest falls far short of an impermissible expression of opinion testimony as to the defendant's sanity; the mere appearance of "normalcy" is not coextensive with the legal standard of sanity or insanity.

8. COURTS—APPELLATE COURTS—SUPREME COURT—OPINIONS—PRECEDENTIAL VALUE.

A Supreme Court decision for which five separate opinions were written, which opinions agree on nothing except that the conviction involved should be reversed for a variety of reasons, has no binding precedential value.

## DISSENT BY LESINSKI, C. J.

9. CRIMINAL LAW—POLICE OFFICERS—EVIDENCE—LAY OPINION EVIDENCE—MENTAL CONDITION—NEW TRIAL—FOUNDATION.

*An adequate foundation is a prerequisite for the admission of lay opinion evidence, and where police officers testified that a*

*defendant appeared "normal" at the time of his arrest and the defendant objected to these conclusions because this testimony constituted lay opinion evidence of his mental condition and as such was inadmissible for lack of the required foundation reversal for a new trial is required.*

10. EVIDENCE—OPINION EVIDENCE—FOUNDATION.

*There is no authority in Michigan for the proposition that lack of an adequate foundation goes only to the weight and not to the admissibility of opinion evidence.*

11. CRIMINAL LAW—EVIDENCE—POLICE OFFICERS—SANITY—PROSECU-
TORS.

*The testimony of police officers that defendant appeared "normal" at the time of his arrest was introduced as evidence of the defendant's sanity where the prosecutor himself treated it as such in the course of the trial and where he treated the testimony as proof of sanity in his closing argument.*

12. COURTS—PRECEDENT—EVIDENCE—OPINION TESTIMONY—SANITY.

*A Supreme Court opinion establishing that an adequate foundation is a prerequisite for the admission of lay opinion evidence of mental condition should not be rejected as precedent where although five opinions were written the majority of the justices agreed on that principle.*

13. APPEAL AND ERROR—DIVIDED OPINIONS—PRECEDENT.

*A case decided by an evenly divided appellate court has no precedential value.*

14. WITNESSES—LAY WITNESS TESTIMONY—MENTAL CONDITION—EVI-
DENCE—FOUNDATION—ADMISSIBILITY.

*As a necessary foundation for lay witness opinion testimony of mental condition it must be shown that the witness had ample means to observe his subject; it is not, and never has been, the rule that the existence of a foundation goes only to weight and not admissibility.*

15. CRIMINAL LAW—EVIDENCE—LAY OPINION TESTIMONY—SANITY—
FOUNDATION.

*A trial court erred in admitting lay opinion testimony of a defendant's sanity where the periods of observation by the witnesses did not provide an adequate foundation for the admission.*

Appeal from Oakland, Arthur E. Moore, J. Sub-

mitted February 14, 1975, at Detroit. (Docket No. 21038.) Decided November 24, 1975.

James L. Sargeant was convicted of breaking and entering with the intent to commit a larceny. Defendant appeals by leave granted. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*John M. Leh,* for defendant.

Before: Lesinski, C. J., and D. E. Holbrook, Jr. and O'Hara,* JJ.

D. E. Holbrook, Jr., J. The defendant was charged with breaking and entering with the intent to commit a larceny, MCLA 750.110; MSA 28.305. The defendant filed an insanity defense. However, on February 22, 1974, a jury rejected it and he was convicted. Defendant was sentenced to from 6 years 8 months to 10 years in prison. Defendant appeals by leave granted on a motion for a delayed appeal.

The defendant does not dispute the basic facts of the case. During the early morning hours of June 1, 1973, the police were called to a tool and die shop. When they arrived at the scene they discovered a broken window and found the defendant inside the building attempting to leave by the front door. He was carrying a can of beer and a briefcase at the time. In his confession he admitted that he intended to take the briefcase, and a

_____
* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

television set and radio that were found nearby, from the building.

On direct examination the prosecutor questioned the police officers who were at the scene how the defendant acted or appeared at the time of his arrest. The first officer testified that the defendant appeared "normal". Defendant objected to this conclusion. In response, the trial court limited the officer to testifying as to what he observed. When the question was asked of the second police officer defendant again objected for the same reason that the prosecutor was trying to introduce lay opinion testimony concerning defendant's sanity. At this point the prosecutor countered by arguing that he was attempting to lay the foundation for the introduction of defendant's confession. It was the prosecutor's contention that this was necessary, since there had been an indication that the defendant had been drinking, to show that he had the faculties to make a voluntary confession.[1]

To establish the defendant's insanity, four expert witnesses were called. The first two witnesses testified that they had examined the defendant in 1952 when he was nine years old. They stated that at that time the defendant had shown signs of severe emotional disturbance and that he lived in a fantasy world. Defendant's third witness was the chief psychologist in the reception diagnostic center at Jackson prison. He stated that he interviewed the defendant in 1968 and that although the defendant knew right from wrong he could not resist the impulse to commit a crime. Defendant's fourth expert witness was a psychiatrist who briefly examined the defendant before trial six

---

[1] A *Walker* hearing *(People v Walker [On Rehearing]*, 374 Mich 331; 132 NW2d 87 [1965])* was held at this point. After the hearing the trial court admitted the confession into evidence during the testimony of the officer who secured the confession.

months after the crime had been committed. This doctor testified that in his opinion this breaking and entering was related to defendant's mental illness and that the defendant could not resist behaving as he did. Each of these witnesses was thoroughly cross-examined by the prosecution. Defendant also introduced, by stipulation of the prosecutor, a list of 52 crimes that the defendant had committed in the past 25 years.[2]

Defendant's only meritorious issue on appeal concerns the characterization made by the police officers that he was "normal". He claims that these characterizations were lay opinion testimony on the issue of his sanity without a proper foundation as required by *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969). However, we do not need to enter the dispute between the various panels of this Court as to the precedential value of *People v Cole, supra,* since we conclude that the officer's testimony was not lay opinion testimony concerning the defendant's sanity. Compare *People v Alsteens,* 49 Mich App 467; 212 NW2d 243 (1973), with *People v Thompson,* 30 Mich App 142; 186 NW2d 4 (1971).

From the beginning of the trial and until some evidence is introduced to the contrary, the defendant is presumed to be sane. *People v Woody,* 380 Mich 332, 338; 157 NW2d 201 (1968), *People v Garbutt,* 17 Mich 9, 22; 97 Am Dec 162 (1868), *People v Livingston,* 57 Mich App 726, 732; 226 NW2d 704 (1975). This presumption attaches to the defendant no matter what notice the prosecution has that the defendant will present an insanity defense. Although the prosecution is always required to prove the defendant sane beyond a

---

[2] Among these were 36 cases of breaking and entering, 12 escapes from custody, and 4 cases of destruction of property.

reasonable doubt, until some evidence is introduced to show that the defendant is insane, the presumption of sanity satisfies the prosecution's burden of proof. *People v Krugman,* 377 Mich 559, 563; 141 NW2d 33 (1966), *People v Livingston, supra.* In fact, the prosecution has a duty not to introduce evidence on the issue of the defendant's sanity until after the defendant has. *People v Williams,* 218 Mich 697, 700; 188 NW 413 (1922), *People v Plummer,* 37 Mich App 657, 659; 195 NW2d 328 (1972).

Since no evidence was introduced during the prosecution's case-in-chief tending to show that the defendant was insane, the prosecution had no reason to introduce the policemen's testimony as evidence that the defendant was sane. This is true even though the prosecutor mistakenly argued that since the issue of insanity had been raised, he needed to rebut it. The trial court properly corrected him that the issue was not raised until there was evidence introduced on the subject. Although this mistaken belief might show the intent of the prosecution to use these statements by the police officers as lay opinion testimony, several factors militate against such a reading.

First, the trial court corrected the prosecutor's mistaken belief during the testimony of the first police officer and the prosecutor continued to ask similar questions. We will not presume that an attorney as an officer of the court will deliberately ask improper questions after he has been corrected by the trial court. Second, when the defendant objected during the questioning of the second police officer, the prosecutor stated that the questions were necessary to establish the voluntariness of the defendant's confession since there was testimony that the defendant had been drinking.

Furthermore, a fair reading of the objectionable questions asked both officers in the context of their testimony convinces us that the questions did not imply any opinion of the police officers as to the defendant's sanity. In addition the trial court took pains to insure that the jury would not draw the wrong inferences from the officers' testimonies following the defendant's objections. It made the first officer clarify that he was talking about the defendant's physical appearance when he mentioned the word "normal". It also made sure that the second officer was referring to the defendant's sobriety, not sanity.

However, the defendant argues that even if the police officer's testimony was not an expression of lay opinion concerning the defendant's sanity, it acquired that character when the prosecutor referred to it as such to "rebut" the testimony of the defendant's experts. There he said,

"Now match that [the testimony of the defendant's experts] up against the testimony of police officers who actually observed the defendant on the night and during the commission of the crime. Now these are people that you can see when they testified as to how he acted, you can see for yourself because as I stated earlier, opinion evidence is worth nothing more or nothing less than any other witness who takes the stand."

We note, however, that no objection was made at that time. Hence, the issue of the statement's appropriateness is not properly before us. Any error appearing in the statement clearly could have been rectified by the trial court if a timely objection had been made and a curative instruction requested. *People v McLendon,* 51 Mich App 543; 215 NW2d 742 (1974). Although we do not intimate that it could, this comment by the prose-

cutor certainly does not make the police officer's testimony into lay opinion testimony of the defendant's sanity. It is not necessary to strain to do it either since the prosecution discharged its burden of proving defendant's sanity beyond a reasonable doubt by its cross-examination of the defendant's expert witnesses. *People v Fisk,* 62 Mich App 638; 233 NW2d 684 (1975), *cf. People v Finley,* 38 Mich 482, 485–486 (1878).

We find no error. Affirmed.

O'HARA, J. *(concurring).* I concur in the result reached by Judge HOLBROOK.

I limit my concurrence to holding that the statement of a non-expert witness that the defendant appeared "normal" to him at the time of his arrest falls far short of impermissible expression of opinion testimony as to the defendant's sanity. The mere appearance of "normalcy" is not coextensive with legal sanity or insanity.

So far as *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969), discussed in some depth by the Chief Judge in his dissent, is concerned, I don't believe it controls anything, much less being dispositive of this case. Five separate opinions in that case agreed on nothing except that the conviction should be reversed for a variety of reasons, none of which commanded a majority. The decision in that case, in my view, is of no binding precedential value.

Thus, I make the very explicit and limited holding that on this record, as I read it, I find no preserved reversible error. This holding is supported by statute, MCLA 769.26; MSA 28.1096.

I also vote to affirm the conviction.

LESINSKI, C. J. *(dissenting).* The defendant,

James Leonard Sargeant, was charged with break-
ing and entering with the intent to commit a
larceny, MCLA 750.110; MSA 28.305. Defendant
pled not guilty and not guilty by reason of insanity
and was convicted before a jury in Oakland
County Circuit Court. This Court granted defend-
ant leave for a delayed appeal from his conviction.

The facts surrounding commission of the crime
charged were undisputed. In the early morning
hours of June 1, 1973, several police officers re-
sponded to a call indicating an alarm situation at
a small industrial shop in Ferndale. When the
officers arrived, they discovered a broken window
in the shop and observed the defendant inside the
building carrying a briefcase about. They entered
the building and arrested the defendant. The offi-
cers also found a television set on the floor and
items from the shelves in disarray. The next morn-
ing the defendant confessed that he broke into the
building and was in the process of taking a televi-
sion set, a radio and a briefcase full of papers
when the police apprehended him.

During the course of the trial, the prosecutor.
asked two of the apprehending police officers how
the defendant acted or appeared at the time of his
arrest. Both officers testified that the defendant
appeared "normal". Defendant objected to these
conclusions, but the trial court let them stand.

In defense against the charge, defendant pre-
sented four expert witnesses to testify to his men-
tal condition. The first witness testified to an
examination of the defendant in 1952, when de-
fendant was nine years old. At that time the
defendant had shown signs of severe emotional
disturbance and average or dull-normal intelli-
gence. A second witness who had examined the
defendant that same year found signs in the de-

fendant of a potential character neurosis. This manifested itself as a tendency to disclaim responsibility for his actions; the defendant was "relatively free from guilt", lived somewhat in a fantasy world and tended to act out any impulse which came to him. Neither witness had had contact with the defendant since 1952; both stated that his mental condition then was relevant to his condition in 1973, but not in any way conclusive of it.

Defendant's third witness was the chief psychologist in the reception diagnostic center at Jackson prison. He interviewed the defendant in 1963. He testified that at that time the defendant knew the difference between right and wrong but "could not resist the impulse, or as he expressed it, the need to commit crime". On cross-examination the witness gave his opinion that the defendant would probably not commit a crime with a policeman at his side, but that his impulsiveness was a pattern which probably continued until 1973 and that the defendant could not resist a specific opportunity to commit a crime.

Defendant's fourth witness was a psychiatrist who briefly examined the defendant before trial. The doctor testified to his opinion that this particular crime was related to defendant's illness and that defendant could not resist behaving in the manner in which he behaved.

The only other element of proof which defendant presented was a list of offenses which he had committed beginning when he was six years old. The list, to which the prosecutor stipulated, included 52 separate offenses. Among these were 36 breaking and enterings or thefts, 12 escapes from various institutions, and 4 cases of destruction of property.

Defendant's primary issue on appeal concerns the admissibility of the arresting officers' testimony that he appeared "normal" at the time of his arrest. Defendant contends that this testimony constituted lay opinion evidence of his mental condition and as such was inadmissible for lack of the foundation required by *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969). The plaintiff counters defendant's contention with two arguments in the alternative. Plaintiff's first position is that the officers' testimony was not introduced for the purpose of showing mental condition but to show lack of intoxication and therefore *Cole* does not apply and no foundation was necessary for the testimony. Plaintiff argues secondarily that even if the officers' testimony dealt with the question of sanity, *People v Cole* does not require a foundation as a prerequisite for the admission of such testimony. Plaintiff relies on *People v Alsteens,* 49 Mich App 467; 212 NW2d 243 (1973), which held that *Cole* stated no ruling principle of law and that the existence of an adequate foundation for lay opinions involves "a question of weight to be given the testimony rather than one of admissibility". *Supra* at 475; 212 NW2d at 247. Thus, plaintiff argues, a weak foundation for an opinion as to mental condition does not render that opinion inadmissible; rather, the weakness is a factor to be considered by the jury in assigning weight to the opinion.

For the reasons which follow, I conclude that *People v Cole, supra,* governs this case and requires that we reverse for a new trial. The conclusion is based upon my analysis of *Cole* and the Court of Appeals decisions which have followed it, especially *People v Alsteens, supra.* In particular *Cole* clearly requires an adequate foundation as a

prerequisite for the admission of lay opinion evidence. I further note that there is no authority in Michigan for the proposition in *Alsteens* that lack of an adequate foundation goes only to weight and not to admissibility of opinion evidence. Finally, the prosecution did not establish an adequate foundation for its witnesses' testimony.

I deal initially with plaintiff's argument that the officers who testified that the defendant appeared "normal" were only speaking about whether the defendant was intoxicated. In the testimony of Officer Lemke, the officer testified generally of the defendant that "he appeared normal to me". Defendant objected and the trial court made an unclear ruling on the admissibility of the statement. At the close of the officer's testimony, however, the court ruled that the police officer's characterization of defendant as "normal" could stand. The trial court allowed similar testimony of a second witness, Officer Combs, to be admitted.

It appears that this testimony was introduced as evidence of the defendant's sanity, for the prosecutor himself treated it as such in the course of the trial. At one point, in responding to defendant's objection, the prosecutor said:

"Could I put a statement on the record, your Honor. I believe the issue of the defendant's sanity is raised and it becomes incumbent upon the people to have some sort of proofs your Honor."

Indeed, the prosecutor treated the testimony as proof of sanity in his closing argument. After summarizing the testimony of defendant's expert witnesses, he said:

"Now match that up against the testimony of police officers who actually observed the defendant on the

night and during the commission of the crime. Now
these are people that you can see when they testified as
to how he acted *[sic]*, you can see for yourself because
as I stated earlier, opinion evidence is worth nothing
more or nothing less than any other witness who takes
the stand."

Because the testimony objected to constituted lay
opinion of mental condition, we must consider
whether the opinions were admissible in light of
*People v Cole, supra.*

The primary difficulty in applying *People v Cole*
arises from the multiplicity of opinions in that
case. The six Justices participating in *Cole* pro-
duced five separate concurrences. Justice T. M.
KAVANAGH authored the major opinion in the
case, holding that the opinion testimony of five lay
witnesses was inadmissible for lack of a proper
foundation. *People v Cole, supra,* at 715; 172
NW2d at 363. Justice T. M. KAVANAGH set out a
two-fold legal test to determine the adequacy of a
foundation for such testimony. Before a lay wit-
ness may testify to the mental condition of a
person, the Justice stated, the witness must be
shown to have had ample opportunity to observe
the person's conduct *and* sufficient acquaintance-
ship with the person *"to testify to mental condi-
tion on a comparative basis and not merely to
some manifested idiosyncrasy or eccentric behav-
ior".* (Emphasis in original.) *People v Cole, supra,*
at 710; 172 NW2d at 361. The authority cited for
this position, and throughout the opinion for ex-
cluding the testimony, was *People v Zabijak*, 285
Mich 164; 280 NW 149 (1938). Justices DETHMERS
and BRENNAN concurred specially, but explicitly
endorsed this aspect of Justice KAVANAGH's opin-
ion.

The other opinion of special interest is the short

concurrence of Justice ADAMS. He concurred in holding lay testimony inadmissible. without a proper foundation and agreed that the specific evidence at issue in *Cole* should not have been admitted. Instead of restating the legal rule to require that a lay witness have prior acquaintanceship with the defendant, however, he chose merely to reaffirm and apply the rule from *People v Zabijak, supra,* at 185:

"A nonexpert witness who has had ample means to observe and form conclusions as to the mental condition of a person and who testifies to pertinent facts on which his conclusions are based may state his conclusions as to the insanity of a person."

Stated in this fashion, the rule was virtually the same as the first half of the rule advocated by Justice T. M. KAVANAGH. Justice KELLY concurred in the result on the grounds that the evidence was insufficient to prove the defendant sane. Justice BLACK concurred upon an entirely distinct ground and Justice T. G. KAVANAGH took no part in the decision.

Two panels of the Court of Appeals have held that because of this diversity of opinion among the Justices, the *Cole* decision should be given little value as precedent. See *People v McBride,* 55 Mich App 234, 241–243; 222 NW2d 195, 198–199 (1974), *People v Alsteens, supra.* Rather than following *Cole, Alsteens* and *McBride* adopted the view that no minimum foundation was necessary for the admission of lay opinion testimony but, rather, that all such evidence should go to the jury which would consider the foundation in giving it weight. The *Alsteens* and *McBride* panels cited *People v Hannum,* 362 Mich 660; 107 NW2d 894 (1961), as sole support for their position. I reject this ap-

proach for several reasons. First, this analysis of
*People v Cole* indicates that a majority of the
Justices agreed on certain principles which dictate
the rules of law applicable to our case. Most
importantly, Justices T. M. KAVANAGH, DETHMERS,
BRENNAN and ADAMS all agreed to the principle
that the existence of an adequate foundation is
necessary for the admission of lay opinion of men-
tal condition. Equally clear is their agreement
upon the nature of the necessary foundation: they
all held that the prior decision in *People v Zabijak,
supra,* required that the witness have "ample
means to observe" the conduct of the person whose
mental condition is in issue. Finally, they all
agreed that the evidence in *Cole* was inadmissible
under this standard. Their only point of disagree-
ment was over that portion of Justice KAVANAGH'S
opinion which required that a lay witness have
some prior acquaintanceship with the person
about whom he testified, a requirement which was
pure dictum in any event. A majority of the Court
in *Cole* clearly held that lay opinion testimony of
sanity is inadmissible unless it be shown as a
foundation for that opinion that the witness had
"ample means to observe" his subject.

My second objection to the *Alsteens* and *Mc-
Bride* opinions is that the authority which they
cite is itself of no precedential value. Both cases
draw the notion that lack of a foundation for
opinion testimony goes only to the weight of the
evidence and not its admissibility from *People v
Hannum, supra. Hannum* possesses no preceden-
tial value, however, because it was decided by an
evenly divided court. See *Breckon v Franklin Fuel
Co,* 383 Mich 251, 278–279; 174 NW2d 836, 847
(1970). Four Justices in *Hannum* did indeed say
that a foundation goes to weight and not admissi-

bility, but an equal number found the lay opinions inadmissible for lack of the proper foundation, citing *People v Zabijak, supra.* It appears to us that *People v Zabijak* survived the *Hannum* decision and was reaffirmed by *People v Cole.* The rule in Michigan law has always been, and still is, that as a necessary foundation for lay witness testimony of mental condition it must be shown that the witness had "ample means to observe" his subject; it never has been, and is not, the rule that the existence of a foundation goes only to weight and not admissibility. *People v Cole, supra, People v Zabijak, supra.*

Finally, I observe that other panels of this Court have regularly applied *Cole* to the issue before us. In *People v Thompson,* 30 Mich App 142; 186 NW2d 4 (1971), for example, a panel of this Court found that the opinion testimony of a witness who had observed the defendant for at most 3-1/2 hours was "clearly prohibited by *People v Cole*". Other panels have routinely applied *Cole* in a similar fashion without questioning its validity. See *People v Corsa,* 50 Mich App 479; 213 NW2d 579 (1973), *People v Banks,* 50 Mich App 622, 629; 213 NW2d 817, 820 (1973), *People v Plummer,* 37 Mich App 657; 197 NW2d 328 (1972).

I encounter no difficulty in applying *Cole* to the instant case. Officer Lemke testified that the defendant was normal, although he only observed the defendant for about half an hour. Officer Combs drew the same conclusion after observing the defendant for about five minutes. The plaintiff does not even argue on appeal that these brief periods of observation provided the "ample means to observe" the defendant's conduct required by law. The periods of observation in this case do not provide an adequate foundation for the admission

of lay opinion of sanity, and that the trial court erred in admitting the opinions. *People v Cole, supra, People v Zabijak, supra, People v Thompson, supra.* Thus this case must be reversed and remanded for a new trial.

I would reverse and remand for a new trial for the reasons stated.