PEOPLE v SORNA

Docket No. 77-2549. Submitted April 4, 1978, at Lansing.—Decided
February 5, 1979.

Jules V. Sorna was found guilty of armed robbery but mentally
ill, Oakland Circuit Court, Frederick C. Ziem, J. Pursuant to
the defense-of-insanity statute both defendant and the people
were granted the appointment of independent psychiatrists to
evaluate defendant's sanity. The prosecutor was to file a copy of
his psychiatric evaluation with defendant and defendant was
ordered to furnish the prosecutor with any written psychiatric
reports if defendant decided to proceed with an insanity de-
fense. The respective reports were exchanged but defendant's
psychiatrist did not testify nor did the prosecutor use defend-
ant's psychiatric report at trial. Defendant appeals, raising four
claims of error: (1) the statutory requirement of submission of
independent psychiatric reports to a prosecutor violates the
attorney-client privilege, (2) an order to submit psychiatric
evaluation reports to the prosecution upon the defense decision
to proceed with an insanity defense offends equal protection
and due process, (3) a statute which permits a jury to find a
defendant, who has pled insanity, guilty but mentally ill, is
unconstitutional because it creates an irrational classification
violative of equal protection where the Department of Correc-
tions lacks the capacity and is not providing appropriate psy-
chiatric treatment for mentally ill patients such as defendant,
and (4) the court's jury instruction concerning the availability
of treatment at the Department of Corrections created the risk

REFERENCES FOR POINTS IN HEADNOTES

[1-5] 21 Am Jur 2d, Criminal Law §§ 48, 49, 62-74, 357, 365.
   Validity and construction of statutes providing for psychiatric
      examination of accused to determine mental condition. 32 ALR2d
      434.
[6] 16 Am Jur 2d, Constitutional law §§ 500, 501.
[7] 21 Am Jur 2d, Criminal Law § 31 *et seq.*
[8] 4 Am Jur 2d, Appeal and Error §§ 491, 492, 509, 527.
[9] 52 Am Jur 2d, Mandamus §§ 128, 166.
[10] 21 Am Jur 2d, Criminal Law § 368.

of a compromise verdict on the issue of defendant's insanity and consequent criminal responsibility. *Held:*

1. The statutory requirement of submission of independent psychiatric reports to a prosecutor by a defendant who pleads insanity does not violate the attorney-client privilege because the Legislature may, without constitutional violation, provide for specific exemptions in a statute where a defendant's insanity is in issue and it may limit the use of psychiatric reports so as to avoid the issue of attorney-client privilege; the attorney-client privilege is not immune from development by case law or modification by statute.

2. The filing of an insanity notice and request for an independent psychiatric examination automatically triggers an exchange of reports and psychiatric information between the defendant and prosecutor without need for judicial intervention; therefore, the defendant was not deprived of equal protection of the law and due process because he was not required to do anything more than what he and all similarly situated defendants are already obligated to do.

3. Determination of statutory classifications is the business of the Legislature and where the Legislature discovers a need to make experimental classification in a practical and troublesome area, a reviewing court need only inquire whether a challenged distinction rationally furthers some legitimate articulated state purpose. The Legislature, in formulating the defense-of-insanity statute, has established an intermediate category to deal with situations where a defendant's mental illness does not deprive him of substantial capacity to satisfy the insanity test but does warrant treatment in addition to incarceration and this statutory classification allows a finding of "guilty but mentally ill" which is a reasonable statutory classification.

The issue of the ability of the Department of Corrections to provide psychological treatment to persons convicted by a verdict of "guilty but mentally ill" was raised on appeal by affidavit not a part of the record. The Court of Appeals will not consider allegations contained in affidavits outside the record to supply any deficiencies therein.

4. The court's jury instruction that a "guilty but mentally ill" defendant would receive psychiatric treatment at the Department of Corrections did not mislead the jury concerning the treatment available. The instruction did not deprive defendant of due process or equal protection nor create the risk of a compromise verdict on the issue of defendant's sanity and consequential criminal responsibility where trial testimony would support a finding of "mentally ill" and that defendant

had received psychiatric treatment during a previous stay at Jackson Prison. In light of the evidence presented, it would have been premature and speculative to instruct the jury that the Department of Corrections would not be able to fulfill its treatment obligations in the future.

Affirmed.

1. CRIMINAL LAW — DEFENSE OF INSANITY — PSYCHIATRIC REPORTS — MENTAL HEALTH — PUBLIC JUSTICE — ATTORNEY-CLIENT PRIVILEGE — STATUTES.

The limitations on the use of psychiatric reports and the testimony contained in those reports under the statute covering the defense of insanity reflect the Legislature's intent to facilitate a complete exploration of the mental state of a defendant in the interest of public justice and yet avoid a violation of the attorney-client privilege (MCL 768.20a; MSA 28.1043[1]).

2. CRIMINAL LAW — INSANITY — PSYCHIATRIC REPORTS — COMMON LAW — CONSTITUTIONAL LAW — ATTORNEY-CLIENT PRIVILEGE.

The common-law attorney-client privilege is not immune from development by case law or modification by statute; the Legislature may provide for specific exemptions where a defendant's insanity is in issue or limit the use of psychiatric reports so as to avoid the issue of attorney-client privilege.

3. CRIMINAL LAW — DEFENSE OF INSANITY — STATUTES — FACT FINDING — PREJUDICE.

A statute which limits the use of psychiatric reports as evidence at a trial where a defendant pleads insanity as a defense strikes a balance between any possible prejudice to the defendant and the strong interest of the state in accurate fact-finding by its courts (MCL 768.20a; MSA 28.1043[1]).

4. CRIMINAL LAW — DEFENSE OF INSANITY — PSYCHIATRIC REPORTS — PROSECUTORIAL REVIEW — EQUAL PROTECTION — DUE PROCESS — STATUTES.

The defense-of-insanity statute creates a procedure for the submission of psychiatric reports to the defense or prosecution which is automatically triggered by the filing of an insanity notice and request for an independent psychiatric examination, theoretically without the need for judicial intervention (MCL 768.20a[6][a]; MSA 28.1043[1][6][a]).

5. CRIMINAL LAW — DEFENSE OF INSANITY — PSYCHIATRIC REPORTS — EXCHANGE OF REPORTS — EVALUATION OF REPORTS.

A court order to supply the prosecution with copies of psychiatric reports does not threaten the loss of a defendant's insanity

defense, it merely provides defense counsel with an opportunity to evaluate the contents of the report and its probable effect on the insanity defense before submission to the prosecutor.

6. CRIMINAL LAW — STATUTES — STATUTORY CLASSIFICATIONS — LEGISLATURE — STATE PURPOSE — REVIEW.

A reviewing court need only inquire whether a challenged distinction rationally furthers some legitimate, articulated state purpose where a state Legislature discovers a need to make experimental classifications in a practical and troublesome area.

7. CRIMINAL LAW — CLAIM OF INSANITY — ELEMENTS OF INSANITY — LEGISLATURE — STATUTES — STATUTORY CLASSIFICATIONS.

Successful assertion of an insanity claim requires proof of two elements before a defendant is absolved of criminal responsibility: (1) mental illness; and (2) lack of substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the law; the Legislature, in formulating the defense-of-insanity statute, has established an intermediate category to deal with situations where a defendant's mental illness does not deprive him of substantial capacity sufficient to satisfy the insanity test but does warrant treatment in addition to incarceration (MCL 768.36; MSA 28.1059).

8. APPEAL AND ERROR — RECORD ON APPEAL — AFFIDAVITS.

The Court of Appeals will not consider allegations contained in affidavits outside the record to supply any deficiencies therein.

9. CRIMINAL LAW — DEPARTMENT OF CORRECTIONS — GUILTY BUT MENTALLY ILL — PSYCHIATRIC TREATMENT — DUTY TO PROVIDE TREATMENT — BREACH OF DUTY — MANDAMUS — STATUTES.

The appropriate remedy where the Department of Corrections fails to meet its statutory obligation to provide the psychiatrically-indicated treatment for a defendant and other inmates sentenced under the statute providing for a verdict of guilty but mentally ill would be a complaint for a writ of mandamus to the Department of Corrections to enforce its duty under the statute (MCL 768.36; MSA 28.1059).

10. WITNESSES — CRIMINAL LAW — IDENTIFICATION OF DEFENDANT — LINE-UPS — CONSTITUTIONAL LAW — LINE-UP PROCEDURES — CONSTITUTIONAL OBJECTIONS — INDEPENDENT BASIS — HEARINGS.

A hearing to determine if line-up procedures were constitutional is not required in all cases of line-up identification, including those cases where the defendant has not raised any specific

constitutional objections to the line-up procedures; where the risk of a tainted in-court identification is not alleged to exist, a hearing to determine the independent basis for that identification is unnecessary.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Lawrence J. Bunting,* Assistant Prosecuting Attorney, for the people.

*Glazer & Cotton,* for defendant on appeal.

Before: ALLEN, P.J., and V. J. BRENNAN and M. F. CAVANAGH, JJ.

M. F. CAVANAGH, J. Defendant was charged with armed robbery, MCL 750.529; MSA 28.797. Upon the filing of the required notice, defendant interposed a defense of insanity. Defendant petitioned for and was granted the appointment of an independent psychiatrist to evaluate his insanity, pursuant to MCL 768.20a; MSA 28.1043(1). The prosecutor also requested appointment of a psychiatrist to evaluate the defendant on behalf of the people, also on the authority of this statute. A copy of this evaluation was to be filed with the defense. Subsequently, the trial court, upon motion and argument by the people, likewise ordered the defendant to furnish to the prosecution any written psychiatric report prepared by the defense psychiatrist. The trial court conditioned its order on the defendant's decision to proceed with the insanity defense. The respective reports were exchanged, although defendant's psychiatrist did not testify nor did the prosecutor use the defense psychiatric report at trial. Defendant was found "guilty but mentally ill" of the charged offense after a jury trial, and appeals by right.

Defendant raises four claims of error on appeal. The first three errors assigned by defendant concern issues pertaining to defendant's insanity defense and the jury's verdict of guilty but mentally ill.

He argues first, that the statutory provision (MCL 768.20a; MSA 28.1043[1]) requiring submission to the prosecutor of any independent psychiatric report prepared for the defense violates the attorney-client privilege. He contends further that the trial court improperly conditioned its order to submit the report upon the defense decision to proceed with an insanity defense, thereby offending equal protection and due process. Defendant next attacks the constitutionality of MCL 768.36; MSA 28.1059, which permits the jury to find a defendant who has pled insanity "guilty but mentally ill". He argues that the statute itself creates an irrational classification violative of equal protection, and that it is unconstitutional as applied because the Department of Corrections lacks the capacity and is not providing the appropriate psychiatric treatment for mentally ill inmates such as defendant. In this regard, he also argues that the required instruction concerning the disposition of a defendant convicted under MCL 768.36; MSA 28.1059, misled the jury concerning the availability of treatment and created the risk of a compromise verdict on the issue of the defendant's insanity and consequent criminal responsibility.

Defendant relies on the holding of *People v Hilliker*, 29 Mich App 543; 185 NW2d 831 (1971), to support his first contention that the trial court's order permitting prosecution access to the defense psychiatric report violated the attorney-client privilege. *Hilliker* found a violation of this privilege in the trial court's failure to exclude testimony of a

defense psychiatrist called by the prosecution, as well as the evidence of his written psychiatric report.

However, the defendant's reliance on *Hilliker* ignores the statutory development in the use of psychiatric reports since that decision. The Legislature, in enacting MCL 768.20a; MSA 28.1043(1) carefully circumscribed the use of independent psychiatric reports in cases where insanity is in issue:

"Statements made by the defendant to personnel of the center for forensic psychiatry or to any independent examiner during an examination shall not be admissible or have probative value in court at the trial of the case on any issues other than his mental illness or insanity at the time of the alleged offense."

The finding of a violation of the attorney-client privilege in *Hilliker* depended heavily on the particular use to which the psychiatric evidence was put. The prosecutor introduced those portions of the defense psychiatrist's written conclusions which concerned his very damaging opinion of the defendant's truthfulness and recall of the offense, apart from any opinion on the defendant's mental health. The use of these reports condemned in *Hilliker* is likewise impermissible under the statute. We therefore do not find *Hilliker* to be controlling on this question.

First, MCL 768.20a; MSA 28.1043(1) specifically authorized the exchange of psychiatric reports which occurred in the case at bar. The limitations on their use contained in the statute reflect the Legislature's intent to facilitate a complete exploration of the mental state of the defendant in the interest of public justice and yet avoid the violation of attorney-client privilege criticized in *Hil-*

*liker.* See *United States v Carr,* 141 US App DC 229; 437 F2d 662, 663 (1970).

Secondly, the common-law attorney-client privilege is not immune from development by case law or modification by statute. Nor do any constitutional impediments appear to exist to prevent the Legislature from either providing for a specific exemption in cases where the defendant's insanity is in issue or to so limit the use of psychiatric reports so as to avoid the issue of privilege. Under either view of the statute, it is obvious that the Legislature, in permitting the limited use of psychiatric reports, struck a balance between any possible prejudice to the defendant and the strong "interest of the State in accurate fact-finding by its courts". *United States v Smith,* 425 F Supp 1038, 1054 (ED NY, 1976), *aff'd without opinion,* 556 F2d 556 (CA 2, 1977). *United States v Albright,* 388 F2d 719 (CA 4, 1968), *Pope v United States,* 372 F2d 710, 720-721 (CA 8, 1967).

Defendant stresses a variety of tactical disadvantages which may result if he is required to furnish the report of "any independent examiner" to the prosecution, including chilling of defendant-psychiatrist communication and discouragement of defense counsel exploration of the insanity issue by gathering a variety of medical opinions. This position ignores the fundamental purpose of a criminal trial: the fair ascertainment of the truth. *People v Johnson,* 356 Mich 619, 621; 97 NW2d 739 (1959), *People v Aldridge,* 47 Mich App 639, 646; 209 NW2d 796 (1973). A necessary concomitant of this goal is a reasonable balancing of advantages and a lessening of a vehemently adversary climate at trial. We view MCL 768.20a; MSA 28.1043(1) as a legislative encouragement of this purpose.

Defendant also argues that because the trial court's order conditioned the defendant's obligation to submit the psychiatric report to the prosecution upon a decision to proceed with an insanity defense, he was deprived of equal protection of the law and due process.

The argument is without merit. MCL 768.20a(6)(a); MSA 28.1043(1)(6)(a) creates a procedure for the submission of psychiatric reports to the defense or prosecution which is automatically triggered by the filing of the insanity notice and request for an independent psychiatric examination, theoretically without the need for judicial intervention. Thus, the court did not order the defendant and his psychiatric expert to do anything more than what they and all similarly situated defendants were already obligated to do. Defendant's reliance on the rule in *People v Sargeant*, 65 Mich App 691; 238 NW2d 175 (1975), to support his contention, is misplaced. *Sargeant* merely clarifies the required order of proof at trial on the issue of insanity in order to restrain prosecution attempts to raise the issue prematurely and should not be used to inhibit the reasonable exchange of psychiatric information prior to trial.

Nor does the order explicitly threaten the loss of defendant's insanity defense, as defendant asserts. It appears merely to provide defense counsel with an opportunity the statute itself does not offer—to evaluate the contents of the report and its probable effect on the insanity defense before submission to the prosecutor.

Defendant also attacks the constitutionality of MCL 768.36; MSA 28.1059, which permits a jury to return a verdict of "guilty but mentally ill" in cases where a defendant has interposed the defense of insanity. Basically, he argues the statu-

tory definitions of mental illness (MCL 330.1400a; MSA 14.800[400a]) and legal insanity (MCL 768.21a; MSA 28.1044[1]) are based upon substantially similar behavioral characteristics. Therefore, it is argued, it is irrational to consider a defendant found "mentally ill" criminally responsible for his acts while excusing one adjudged "legally insane" from a similar responsibility. Consequently, defendant asserts, this irrational classification violates equal protection.

This identical issue was raised before another panel of this Court in *People v Desi Jackson,* 80 Mich App 244; 263 NW2d 44 (1977), a case which found no equal protection violation. We are persuaded that this view is essentially correct. Where a state discovers a need to make experimental classifications "in a practical and troublesome area", the reviewing court need only "inquire whether the challenged distinction rationally furthers some legitimate, articulated state purpose". *McGinnis v Royster,* 410 US 263, 270; 93 S Ct 1055, 1059; 35 L Ed 2d 282, 289 (1973).

Successful assertion of an insanity claim requires proof of two elements before a defendant is absolved of criminal responsibility: (1) mental illness; and (2) lack of substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the law. The Legislature, in formulating MCL 768.36; MSA 28.1059, has established an intermediate category to deal with situations where a defendant's mental illness does not deprive him of substantial capacity sufficient to satisfy the insanity test but does warrant treatment in addition to incarceration. The fact that these distinctions may not appear clear-cut does not warrant a finding of no rational basis to make them. As the United States Supreme Court has observed:

"[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *McGinnis v Royster, supra,* at 270.

Consequently, we find no violation of equal protection.

Finally, we address defendant's contention that the court's instruction concerning the Department of Corrections' obligation to provide psychiatric treatment misled the jury on the availability of treatment.[1] This misinformation, it is contended, may have resulted in a compromise verdict, and deprived the defendant of his due process and equal protection rights to a jury correctly instructed on the facts relative to the actual psychiatric treatment available. In support of his contentions, he asserts by way of affidavit that he is not currently receiving any psychiatric treatment beyond medication.

On appeal, this Court will not consider allegations contained in affidavits outside the record to

---

[1] The court's instruction to the jury concerning the disposition of the defendant if found "guilty but mentally ill" reads:

"A verdict of guilty but mentally ill is a determination that the Defendant is guilty of the crime charged and is a finding of criminal responsibility.

"In most respects, a verdict of guilty of Robbery Armed but mentally ill, is the same as a verdict of guilty. The Defendant may be imprisoned for the same period of time for which he could be sentenced if a verdict of guilty were rendered.

"The distinction in result between a verdict of guilty but mentally ill and a verdict of guilty is that a verdict of guilty but mentally ill imposes upon the Department of Corrections an obligation of providing such treatment as may be psychiatrically indicated if the Defendant is imprisoned."

This instruction is derived from MCL 768.36; MSA 28.1059:

"(3) If a defendant is found guilty but mentally ill or enters a plea to that effect which is accepted by the court, the court shall impose any sentence which could be imposed pursuant to law upon a defendant who is convicted of the same offense. If the defendant is committed to the custody of the department of corrections, he shall undergo further evaluation and be given such treatment as is psychiatrically indicated for his mental illness or retardation."

supply any deficiencies therein. *People v Robinson,*
390 Mich 629, 631 fn 1; 213 NW2d 106 (1973),
*People v Penn,* 70 Mich App 638, 648; 247 NW2d
575 (1976). Based on the record before us, there-
fore, we cannot say that the trial court's instruc-
tion misled the jury into returning a compromise
verdict or deprived the defendant of a jury prop-
erly instructed on the facts and the law. In regard
to the former contention, there was sufficient psy-
chiatric testimony adduced at trial to support the
finding of mentally ill. Secondly, it is apparent
from testimony that the defendant had received a
not insubstantial amount of psychiatric treatment
during a previous stay at Jackson.[2] In light of this
evidence, it would have been premature and specu-
lative for the court to have instructed the jury
that the Department of Corrections would not be
able to fulfill its treatment obligations in the
future.[3]

If the Department of Corrections is failing to
meet its statutory obligation to provide the psychi-
atrically-indicated treatment for the defendant
and other inmates sentenced under MCL 768.36;
MSA 28.1059, then the appropriate remedy would
be a complaint for a writ of mandamus to the
Department of Corrections to enforce its duty
under the statute, rather than reversal of defend-
ant's conviction.

Defendant's final claim of error asserts that the
trial court erred in permitting the prosecutor to
question the complaining witness about her line-up

---

[2] Testimony of Dr. Ames Robey.

[3] It is also questionable whether such an instruction may focus on
post-sentence matters outside the court's authority. In *People v
Sharif,* 87 Mich App 196; 274 NW2d 17 (1978), the trial court's position
that he could only recommend, not require, treatment by the Depart-
ment of Corrections was not disturbed by this Court. This result may
indicate that the court's authority and responsibility is limited under
the statute to matters of incarceration only.

identification of the defendant without first holding a hearing, pursuant to *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), to determine if the line-up procedures were constitutional.

We disagree. We do not read *Wade* as requiring a hearing in all cases of line-up identifications, including those cases where the defendant has not raised any specific constitutional objections to the line-up procedures. Where the risk of a tainted in-court identification is not alleged to exist, a hearing to determine the independent basis for that identification appears unnecessary.

Accordingly, defendant's conviction is affirmed.