·PEOPLE v DOBBEN

Docket No. 91150. Argued April 7, 1992 (Calendar No. 1). Decided
    September 15, 1992.

    Bartley J. Dobben was found guilty but mentally ill by a jury in
    the Muskegon Circuit Court, James ·M. Graves, Jr., J., of two
    counts of the first-degree murder of his children. The Court of
    Appeals, NEFF, P.J., and MAHER and HOOD, JJ., reversed,
    holding that because the people's psychiatric expert, who had
    examined the defendant for competency to stand trial, was not
    an examining qualified clinician, and because the expert did
    not examine the defendant for criminal responsibility pursuant
    to a court order, his testimony violated MCL 330.2028(3); MSA
    14.800(1028)(3) in that it was based on prior competency evalua-
    tions (Docket No. 119010). The people appeal.

    In an opinion by Justice BOYLE, joined by Justices BRICKLEY,
    RILEY, GRIFFIN, and MALLETT, the Supreme Court held:

    When forming an opinion of a defendant's criminal responsi-
    bility, a person qualified to testify as an independent expert
    may, consistent with the Mental Health Code, the Code of
    Criminal Procedure, and the Michigan Rules of Evidence, rely
    on historical data, including information and opinions con-
    tained in prior competency evaluations.

    1. The Legislature did not intend to preclude an expert
    witness who testifies regarding a defendant's criminal responsi-
    bility from relying on information developed during a prior
    examination of the defendant for the purpose of determining
    competency to stand trial. The Mental Health Code and the
    Code of Criminal Procedure were revised in 1974 and 1975 to
    redefine mental illness, to establish the verdict of guilty but
    mentally ill, and to expand the responsibilities of the Center
    for Forensic Psychiatry to include providing evaluations and
    reports regarding a defendant's competency to stand trial and
    criminal responsibility, ánd regarding commitment sought sub-
    sequent to a finding of not guilty by reason of insanity. Section

REFERENCES
Am Jur 2d, Expert and Opinion Evidence §§ 182-189.
Admissibility on issue of sanity of expert opinion based partly on
    medical, psychological, or hospital reports. 55 ALR3d 551.

1028(3) of the Mental Health Code authorizes a clinician to offer opinions concerning a defendant's criminal responsibility and permits the use of historical information gathered in the course of a prior examination of the defendant. Section 20a of the Code of Criminal Procedure recognizes the right to independent expert evaluation regarding the issue of criminal responsibility. Taken together the provisions reveal a comprehensive scheme authorizing expanded use both of forensic center clinicians and independent experts.

2. Section 1028(3) is directed to examining qualified clinicians, not independent experts. It was intended to create a dominant role for the Center for Forensic Psychiatry regarding all issues involving the mental state of a defendant. To that end it authorizes a clinician who examines a defendant for competency to stand trial to testify regarding other issues at the criminal proceeding. If the expert who testifies regarding criminal responsibility also examined the defendant for competency, information of historical value gathered in prior examinations may be used as a basis of the opinion regarding criminal responsibility. However, nothing in the language or legislative history of § 1028(3) suggests that only the clinician who examined the defendant for competency may rely on historical information; an independent examiner also may rely on such information as a basis of an opinion. Section 20a of the Code of Criminal Procedure sanctions the appointment of independent experts to determine criminal responsibility, and does not limit the testimony of such experts. Construing the statutes in pari materia, the Legislature has comprehensively addressed the questions of competency and criminal responsibility and expanded the roles both of clinicians and independent examiners. To require an independent examiner to perform an evaluation pursuant to a court order before relying on the same reports and information relied on by the forensic center examiners would be contrary to its intent.

3. MRE 703 provides that an expert may base an opinion on facts or data perceived or made known at or before a hearing. The court may require that underlying facts or data essential to an opinion or inference be in evidence. Thus, a witness who is qualified as an expert may base an opinion of a defendant's criminal responsibility on personal observation, a hypothetical question, or the testimony of other witnesses, and on hearsay information or the findings and opinions of other experts. The probative value of an opinion of sanity depends on the facts upon which it is based.

Reversed.

Justice LEVIN, joined by Chief Justice CAVANAGH, dissenting, stated that because other issues raised by the defendant in the Court of Appeals were not addressed by the Supreme Court, remand to the Court of Appeals is required for further proceedings.

187 Mich App 462; 468 NW2d 527 (1991) reversed.

CRIMINAL LAW — DETERMINATIONS OF CRIMINAL RESPONSIBILITY — INDEPENDENT EXPERTS.

When forming an opinion of a defendant's criminal responsibility, a person qualified to testify as an independent expert may, consistent with the Mental Health Code, the Code of Criminal Procedure, and the Michigan Rules of Evidence, rely on historical data, including information and opinions contained in prior competency evaluations (MCL 330.2028[3]; MSA 14.800[1028][3], MCL 768.20a[3]; MSA 28.1043[1][3]; MRE 703).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Tony Tague,* Prosecuting Attorney, and *Kevin A. Lynch,* Senior Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *P. E. Bennett*) for the defendant.

BOYLE, J. We granted leave to appeal to decide whether the Court of Appeals correctly held that an independent expert's testimony was inadmissable because it violated § 1028(3) of the Mental Health Code, MCL 330.2028(3); MSA 14.800(1028)(3)[1].

[1] MCL 330.2028(3); MSA 14.800(1028)(3) provides:

The opinion concerning competency to stand trial derived from the examination may not be admitted as evidence for any purpose in the pending criminal proceedings, except on the issues to be determined in the hearings required or permitted by [MCL 330.2030; MSA 14.800(1030)] and [MCL 330.2040; MSA 14.800(1040)]. The foregoing bar of testimony shall not be construed to prohibit the examining qualified clinician from presenting at other stages in the criminal proceedings opinions concerning criminal responsibility, disposition, or other issues if they were originally requested by the court and are available. Information gathered in the course of a prior examination that

At issue is whether the statute limits testimony by an independent psychiatric examiner offered pursuant to § 20a(3) of the Code of Criminal Procedure, MCL 768.20a(3); MSA 28.1043(1)(3).[2] Specifically, we resolve the question whether an independent expert may consider information contained in prior competency evaluations in forming an opinion regarding criminal responsibility.[3]

We hold that the Court of Appeals erred in accepting the premise that § 1028(3) limits the foundation for expert testimony regarding criminal responsibility. The statutes involving competency to stand trial and the defense of insanity do not conflict with each other or the Michigan Rules of Evidence. An independent psychiatric examiner

is of historical value to the examining qualified clinician may be utilized in the formulation of an opinion in any subsequent court ordered evaluation.

[2] MCL 768.20a(3); MSA 28.1043(1)(3) provides:

The defendant may, at his or her own expense, or if indigent, at the expense of the county, secure an independent psychiatric evaluation by a clinician of his or her choice on the issue of his or her insanity at the time the alleged offense was committed. The defendant shall notify the prosecuting attorney at least 5 days before the day scheduled for the independent evaluation that he or she intends to secure such an evaluation. The prosecuting attorney may similarly obtain independent psychiatric evaluation. A clinician secured by an indigent defendant shall be entitled to receive a reasonable fee as approved by the court.

[3] The examination for determining criminal responsibility is concerned with the defendant's mental state at the time the defendant committed the offense. Boyle & Baughman, *The mental state of the accused: Through a glass darkly,* 65 Mich B J 78 (1986). The focus is on the defendant's "blameworthiness." *Id.* If, as a result of mental illness, defined as "a substantial disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life," MCL 330.1400a; MSA 14.800(400a), or mental retardation, a "person lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law," MCL 768.21a(1); MSA 28.1044(1)(1), that person is legally insane, and thus not criminally responsible for his conduct.

may rely on historical information contained in reports of prior competency evaluations in reaching an opinion regarding criminal responsibility. We reverse the decision of the Court of Appeals and reinstate the defendant's convictions.

I

The defendant, Bartley James Dobben, was found guilty but mentally ill of two counts of first-degree murder. MCL 750.316; MSA 28.548. He was sentenced to two concurrent terms of life imprisonment without parole.

The Court of Appeals reversed the conviction on appeal. It held that because the people's psychiatric expert, Dr. Abraham Halpern, who had examined the defendant for competency to stand trial, was not an examining qualified clinician, and because Dr. Halpern did not examine the defendant for criminal responsibility pursuant to a court order, the admission of his testimony at trial violated MCL 330.2028(3); MSA 14.800(1028)(3), and was error that required reversal. 187 Mich App 462, 471; 468 NW2d 527 (1991). We granted leave to appeal. 437 Mich 1047 (1991).

II

On Thanksgiving Day, November 26, 1987, Dobben killed his two young children. Dobben, who had a history of religious preoccupation and bizarre behavior, had been diagnosed as suffering from paranoid schizophrenia and was hospitalized for two months in 1985. On the day in question, Dobben was employed as a foundry ladle operator at the Cannon of Muskegon Foundry.

The defendant, his wife, Susan Dobben, and the children were to eat Thanksgiving dinner at the

home of the defendant's parents. Rather than going directly to his parents' home, Dobben drove to the foundry, ostensibly to retrieve his Bible, which he had left there. He also indicated that he wanted to show his sons where he worked. Upon entering the foundry, which was shut down for Thanksgiving, he chatted with the security guard, making small talk about the holiday. He also explained that he wanted to show his sons where he worked, and he signed the visitor's log sheet. His wife stayed in the car.

Dobben walked to the area where he worked in the foundry. He placed the children into the foundry ladle and "played with them like they were in the sandbox. [He] told them that the slag was just like dirt." He then got out of the ladle, placed the lid on top, lit the torch, and returned to the guard station at the entrance of the plant. The children died of asphixiation.

III

At Dobben's November 27, 1987, arraignment he refused, or failed, to respond to the court's questions. Testimony indicated that he had been unresponsive since his arrest the day before. On a motion by the people, the court ordered Dobben committed to the Center for Forensic Psychiatry in Ypsilanti, to be evaluated for competency to stand trial and to participate in his preliminary examination.

Dobben was first evaluated for competency to stand trial from December 1, 1987, through December 14, 1987, by Moses L. Everett, Ph.D., a certified forensic examiner.[4] Dr. Everett concluded

---

[4] Qualifications for the title certified forensic examiner are found in 1988 AACS, R 330.10056, which provides:

that "Dobben did not meet the statutory criteria[5] for incompetency to stand trial," and recommended to the court that he be "adjudicated as competent to stand trial."

Defendant's mental state deteriorated while in-

---

(1) An applicant for certification as a certified forensic examiner shall demonstrate to the examining facility attainment of the following educational, licensing, and experiential requirements:

\* \* \*

(b) For psychologists, both of the following:

(i) A master's degree or Ph.D. in psychology from an accredited program in a curriculum substantially clinical in nature.

(ii) A State of Michigan license or limited license as a psychologist.

\* \* \*

(d) Familiarity with relevant literature and federal and Michigan cases pertaining to incompetency to stand trial.

(e) Knowledge of the court system, legal process, mental health law, and criminal law.

(f) Knowledge of relevant clinical and ethical issues pertinent to expert witness testimony and forensic practice.

(g) Observation and discussion of 5 examinations related to the issue of incompetency to stand trial with a certified or consulting forensic examiner.

(h) Performance of 5 examinations related to the issue of incompetency to stand trial conducted under the direct supervision of a certified or consulting forensic examiner, including attorney contacts, analysis of collateral material, and preparation of the cosigned court report.

(i) Observation and discussion of expert testimony presented by a certified or consulting forensic examiner.

(j) Performance in a mock trial as an expert witness under the observation and critique of a certified or consulting forensic examiner.

(k) Performance in court as an expert witness under the observation and critique of a certified or consulting forensic examiner.

(2) The examining facility may allow substantially similar experience to meet all or any of the requirements in subdivisions (g) to (k) of subrule (1) of this rule.

---

5 A defendant "shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner." MCL 330.2020(1); MSA 14.800(1020)(1).

carcerated, and he was again evaluated for competency to stand trial. The second evaluation was performed by Harley V. Stock, Ph.D., the associate director of the evaluation unit at the center. Dr. Stock recommended that Dobben be adjudicated incompetent to stand trial but also stated that, with medication, Dobben should be able to regain competency. The court adjudicated Dobben incompetent to stand trial on April 11, 1988.

In July, another competency evaluation was conducted. The examiner recommended that Dobben be adjudicated competent to stand trial.

A notice of insanity defense was filed by defense counsel pursuant to MCL 768.20a(1); MSA 28.1043(1)(1).[6] The court ordered Dobben to undergo examination for criminal responsibility. Dr. Stock, who had previously evaluated Dobben for competency, and Lynn Blunt, M.D., the Clinical Director of the Center for Forensic Psychiatry, conducted the evaluation at the forensic center. It was their opinion that Dobben was mentally ill at the time of the killings and "because of that mental illness, he was unable to appreciate the wrongfulness of his conduct and conform his conduct to the requirements of law."

An order was entered allowing the defendant and the prosecutor each to obtain two expert witnesses, and the prosecutor notified the defendant, pursuant to MCL 768.20a(3); MSA 28.1043(1)(3), of the two independent experts he intended to call at trial.[7] He arranged for Dobben to be seen by

[6] Under MCL 768.20a; MSA 28.1043(1), if a defendant intends to assert the defense of insanity, the defendant must notify the court and the prosecutor of this intent in writing. The court must order the defendant to undergo an evaluation either by personnel at the Center for Forensic Psychiatry or by other persons qualified to perform examinations for criminal responsibility.

[7] Although a letter from defense counsel to the prosecutor acknowledged two experts, only one, Dr. Abraham Halpern, was eventually used by the prosecutor.

Abraham Halpern, M.D., of Port Chester, New York. Dr. Halpern met with the defendant, reviewed the defendant's prior medical and psychological records, police reports, reports compiled by the center regarding the defendant's competency, and the criminal responsibility report prepared by the defendant's experts, Drs. Stock and Blunt. These were essentially the same records that Drs. Stock and Blunt had reviewed. Although Dr. Halpern agreed with Drs. Stock and Blunt that Dobben was mentally ill,[8] he did not agree that Dobben "lacked capacity, let alone substantial capacity, either to appreciate the wrongfulness of his conduct on November 26, 1987, or to conform his conduct to the requirements of law."

### A

At trial, the critical disputed issue was the defendant's mental state at the time of the offense. The principal focus of the dispute was whether defendant was not guilty by reason of insanity, or guilty but mentally ill. On several occasions, defense counsel, citing § 1028(3) as the basis for his objections, sought to prevent the people's expert from testifying because his opinion was based in part on the evaluations for competency performed by the center's staff. On appeal, the Court of Appeals agreed and held that admission of the testimony was error requiring reversal.[9]

---

[8] Dr. Halpern did, however, disagree with Drs. Stock and Blunt about just what type of mental illness Dobben suffered. Dr. Halpern diagnosed Dobben as delusional (paranoid) disorder, DSM-III-R 297.10. Drs. Stock and Blunt diagnosed Dobben as schizophrenic.

[9] Dobben also argued that because Dr. Halpern's report did not comply with the requirements of the Code of Criminal Procedure, MCL 768.20a(6)(b); MSA 28.1043(1)(6)(b), Dr. Halpern should not have been allowed to testify. Although the Court of Appeals declined to address the issue, we have reviewed the claim. Assuming arguendo that the Legislature intended to preclude the testimony of an expert

Comparing § 1028(3) with a superseded provision of the Code of Criminal Procedure,[10] the Court of Appeals reasoned that the enactment of § 1028(3),[11] was intended to remove the harsh prohibition of the former Code of Criminal Procedure barring expert testimony regarding the issue of insanity on the basis of the opinions and information contained in competency evaluations. The Court correctly concluded that § 1028(3) authorized the "examining qualified clinician" who examines a defendant for competency to testify regarding criminal responsibility. However, apparently assuming that experts other than those conducting competency examinations were barred from rendering opinions regarding criminal responsibility in part on the basis of information gained from prior competency evaluations, the Court further concluded that removal of the barrier against testimony regarding criminal responsibility by forensic center clinicians did not extend to other experts.

IV

For the reasons that follow, we hold that the

where the form of the report did not comply with the statute, any defect in the report did not prejudice the defendant. Dr. Halpern's report was supplemented before trial by interviews of the witness by defense counsel. Defense counsel extensively cross-examined Dr. Halpern, had access to the same background psychological information as Dr. Halpern, and received Dr. Halpern's notes.

We also find no merit in the claim that the cumulative effect of a series of erroneous evidentiary rulings denied defendant a fair trial. *People v Robinson*, 386 Mich 551; 194 NW2d 709 (1972); MCL 769.26; MSA 28.1096; MCR 2.613(A).

[10] The predecessor statute, MCL 767.27a(4); MSA 28.966(11)(4) provided:

The diagnostic report and recommendations shall be admissible as evidence in the hearing [adjudicating competency to stand trial], but not for any other purpose in the pending criminal proceedings.

[11] 1975 PA 179.

Legislature did not intend to preclude an expert witness who testifies regarding the issue of criminal responsibility from relying on historical information developed during an examination for a competency determination.

A

To clarify the discussion, we again set forth the text of § 1028(3) of the Mental Health Code. MCL 330.2028(3); MSA 14.800(1028)(3) provides:

> The opinion concerning competency to stand trial derived from the examination may not be admitted as evidence for any purpose in the pending criminal proceedings, except on the issues to be determined in the hearings required or permitted by [MCL 330.2030; MSA 14.800(1030)] and [MCL 330.2040; MSA 14.800(1040)]. The foregoing bar of testimony shall not be construed to prohibit the examining qualified clinician from presenting at other stages in the criminal proceedings opinions concerning criminal responsibility, disposition, or other issues if they were originally requested by the court and are available. Information gathered in the course of a prior examination that is of historical value to the examining qualified clinician may be utilized in the formulation of an opinion in any subsequent court ordered evaluation.

The fallacy in the Court of Appeals opinion is the assumption that because the last sentence of § 1028(3) does not affirmatively authorize admission of the disputed evidence, it is not admissible. Thus, because Dr. Halpern was not both the competency examiner and the examiner for determining criminal responsibility, "his testimony was not authorized under this portion of the statute." 187 Mich App 471. However, the Court did not con-

sider the significance of the related provision of the Code of Criminal Procedure, MCL 768.20a; MSA 28.1043(1). Examination of the entire statutory scheme, the systemic effect of the Court of Appeals opinion, and the Michigan Rules of Evidence, demonstrates the error of the Court's conclusion.

The original historical limitation of the bar regarding testimony of the competency examiner was not a general limitation of the scope of testimony by an independent expert, but a legislative judgment,[12] followed and refined by case authority,[13] that it was unfair to permit the state to involuntarily commit a defendant for a competency examination and subsequently use that examination as a basis for an opinion that the defendant was criminally responsible.

Thereafter, a series of decisions expanding the definition of mental illness for the purposes of the defense of criminal responsibility and narrowing both the conditions for civil commitment and for commitment following a finding of not guilty by reason of insanity, led to a legislative overhaul of the Mental Health Code and the Code of Criminal Procedure. See *People v McQuillan,* 392 Mich 511; 221 NW2d 569 (1974); *People v Martin,* 386 Mich 407; 192 NW2d 215 (1971); *Bell v Wayne Co General Hosp,* 384 F Supp 1085 (ED Mich, 1974). See also Boyle & Baughman, *The mental state of the*

[12] The current statute, MCL 330.2028(3); MSA 14.800(1028)(3), is the result of several revisions by the Legislature. In its original form, the statute prohibited the use of diagnostic reports and recommendations as evidence in the criminal trial. MCL 767.27a(4); MSA 28.966(11)(4).

[13] The statutory prohibition was interpreted not only to prevent introduction of the reports and recommendations concerning competency, but also to preclude the psychiatrist who examined the defendant for competency from testifying regarding criminal responsibility in the criminal trial if the defendant objected to the testimony. See *People v Martin,* 386 Mich 407; 192 NW2d 215 (1971), cert den sub nom *Lewis v Michigan,* 408 US 929 (1972). See also *People v Schneider,* 39 Mich App 342; 197 NW2d 539 (1972).

*accused: Through a glass darkly,* 65 Mich B J 78, 79-80 (1986).

Mental illness was redefined, the verdict of guilty but mentally ill was established, and the Center for Forensic Psychiatry, formerly responsible only for competency evaluations and disposition of persons found not guilty by reason of insanity, was given the responsibility for evaluating and reporting on both competency to stand trial and criminal responsibility.[14] These new statutes also gave the forensic center the responsibility to evaluate and file reports where civil commitment is sought subsequent to a finding of not guilty by reason of insanity.[15] Indeed, the only exception to the center's responsibility under the statutory revisions is the disposition and treatment of persons found guilty but mentally ill.

The Legislature's expansion of the role of the forensic center to encompass evaluation of both competency and criminal responsibility eventually led to adoption of the current form of § 1028(3), expressly authorizing the clinician to offer "opinions concerning criminal responsibility" and ex-

---

[14] See 1974 PA 258; 1975 PA 179; 1975 PA 180. In initially adopting the statute in this form, the Legislature expressly recognized this Court's interpretation in *Martin, supra,* and the Court of Appeals interpretation in *Schneider, supra,* of MCL 767.27a(4); MSA 28.966(11)(4), the statute that 1974 PA 258 replaced.

As enacted by the Legislature in 1974 PA 258, the former version of MCL 330.2028(3); MSA 14.800(1028)(3) provided:

Information gathered in the course of the examination and opinions derived from the examination may not be admitted as evidence for any purpose in the pending criminal proceedings, except on the issues to be determined in the hearings required or permitted by [MCL 330.2030; MSA 14.800(1030)] and [MCL 330.2040; MSA 14.800(1040)]. The foregoing bar of testimony shall not be construed to prohibit an individual who did not participate in the examination or rely upon information or opinions resulting from the examination from testifying on other issues in the pending criminal proceedings.

[15] See 1974 PA 258, MCL 330.2050; MSA 14.800(1050).

panding the permissible scope of testimony by members of the center to permit the use of historical "[i]nformation gathered in the course of a prior examination." At the same time, the Legislature amended the Code of Criminal Procedure to provide the first legislative recognition of the right to independent expert evaluation regarding the issue of criminal responsibility.

Sections 1028(3) and 20a were enacted in their present form and tie-barred by 1975 PA 179 and 1975 PA 180 to ensure that neither would become law unless the other did. Taken together, the provisions clearly reveal a comprehensive scheme authorizing expanded use both of forensic center clinicians and independent experts.

B

Section 1028(3) is directed to "examining qualified clinician[s],"[16] not independent experts. It specifically lifts the former bar to the use of information by members of the forensic center, precluding only "the *opinion* concerning competency" from admission as evidence for any purpose in any criminal proceeding. (Emphasis added.) The plain language of the statute indicates the legislative intent to create a dominant role for the center regarding all issues involving the mental state of a defendant. To that end, § 1028(3) authorizes a clinician who examines a defendant for competency to stand trial to testify regarding other issues at the criminal proceeding. Thus, if the criminal responsibility expert is the same clinician who examined a defendant for competency, the clinician may use information that is of historical

---

[16] There are currently twenty-one examiners, statewide, qualified to examine a defendant only for competency to stand trial. There are an additional thirty-four examiners qualified to examine a defendant both for competency *and* criminal responsibility.

value and that has been gathered in prior examinations as a basis of his opinion regarding criminal responsibility. However, nothing in the language or history of § 1028(3) suggests that *only* the clinician who examined the defendant for competency may rely on historical information.

In short, there is simply nothing in the language of § 1028(3), or its historical context, indicating a legislative purpose to preclude an independent examiner from relying on historical data as a basis for his opinion. The purpose of § 1028(3) is to enhance the central role of the forensic center in evaluating a defendant's competency and criminal responsibility.

C

Neither § 1028(3) nor prior law, as the Court of Appeals assumed, barred the use of historical evidence by independent experts testifying regarding the issue of criminal responsibility. Contrary to the assumption of the Court of Appeals, testimony by experts other than the "examining qualified clinician" is addressed in § 20a of the Code of Criminal Procedure. Balancing the expansion of the role of the government-employed or certified clinician, the Legislature, in § 20a, addressed the procedure for raising the issue of criminal responsibility and, for the first time, gave legislative sanction to the appointment of independent experts. This statute now sets forth the procedure for filing a notice of an insanity defense, mandates an examination by the center upon receipt of a notice of intention to assert the defense, and provides for an independent psychiatric evaluation when requested either by the defendant or the prosecuting attorney. Section 20a makes no reference to any limitation in the testimony of such an expert,

other than that "[s]tatements made by the defendant . . . shall not be admissible . . . on any issues other than . . . mental illness or insanity at the time of the alleged offense."[17] Nor does § 20a require appointment of a specific independent examining psychiatrist.

Construing the statutes in pari materia, it is clear that the Legislature has comprehensively addressed the questions of competency and criminal responsibility, and expanded the roles both of the clinician and the independent examiner. Thus, it is not only anomalous, but contrary to this intent to require that an independent examiner perform an evaluation pursuant to a court order before the examiner may rely on the same reports and information relied on by the forensic center examiners.[18]

Finally, the systemic effect of restricting the scope of the basis for the opinion of the independent examiner reveals the fallacy of the conclusion. Forensic clinicians and independent experts more typically take the following positions in criminal trials: The forensic center's expert testifies that the defendant is criminally responsible, and the independent expert testifies that he is not criminally responsible. In this configuration, if the Court of Appeals analysis is correct, § 1028(3) would preclude a defense expert from examining historical material of significance to the government's expert witness, a conclusion that would raise concerns regarding both confrontation and the defendant's right to fundamental fairness. We

---

[17] MCL 768.20a(5); MSA 28.1043(1)(5).

[18] Indeed, as the Court of Appeals has correctly observed, the independent evaluation provided for in MCL 768.20a(3); MSA 28.1043(1)(3) and the subsequent exchange of the evaluators' reports should occur "without the need for judicial intervention." *People v Sorna,* 88 Mich App 351, 359; 276 NW2d 892 (1979).

are persuaded that the Legislature did not intend to limit the foundation for the opinion of the independent examiner.[19]

V

So construed, the statutes are also consistent with the policy expressed in the Michigan Rules of Evidence and specifically the rule governing expert testimony, MRE 703. The underlying assumption of the Rules of Evidence is that the reliability of the truth-finding process is enhanced by the admission of all probative evidence. See MRE 102. MRE 703 provides that an expert may base his opinion on "facts or data . . . perceived by or made known to him at or before the hearing. The court may require that underlying facts or data essential to an opinion or inference be in evidence." Thus, a witness who is qualified as an expert may state his opinion of a person's mental condition on the basis of observation, a hypothetical question, or the testimony of other witnesses. 3 Wharton, Criminal Evidence (14th ed), § 570, pp 334-341.[20] An expert witness may also base his opinion on hearsay

---

[19] The "subsequent court ordered evaluation" mentioned in MCL 330.2028(3); MSA 14.800(1028)(3) refers not to a specially court-ordered evaluation, as the Court of Appeals found, but to the court-ordered evaluation for criminal responsibility, mandatory under MCL 768.20a(2); MSA 28.1043(1)(2).

In 1983, the Legislature amended MCL 768.20a; MSA 28.1043(1) to allow other persons qualified to perform evaluations of criminal responsibility to perform such examinations. See 1983 PA 42; see also 1988 AACS, R 330.10055-10059 (Department of Mental Health Regulations for qualification of forensic examiners and forensic centers). The amendment allowed clinicians at the Detroit Recorder's Court Clinic to evaluate defendants to determine criminal responsibility in addition to the competency evaluations they had been performing. HB 4091, Substitute H-1, First Analysis, March 2, 1983. The Legislature recognized that "a defendant will often undergo both types of evaluations at the same time." *Id.*

[20] See also *People v Hawthorne,* 293 Mich 15; 291 NW 205 (1940); *People v Drossart,* 99 Mich App 66, 73; 297 NW2d 863 (1980).

information or on the "findings and opinions of other experts."[21]

Indeed, limitation of the basis of an opinion regarding criminal responsibility to firsthand information would

> require[ ] a medical expert to ignore, as best he can, data which from the scientific viewpoint is highly relevant and proper to take into account, namely, the history of the case as related to the doctor by the patient and his relatives, and reports, charts, records and other data prepared by other medical men. In psychiatry, the patient's past medical and social history is of prime importance. A psychiatrist hesitates to make a diagnosis without the illumination afforded by what he calls a "longitudinal study of behavior." But often he learns the history of a patient's aberrant behavior only at second or third hand from friends or relatives, perhaps through a psychiatric social worker. Where the law forbids the psychiatrist to rest his diagnosis on such hearsay material, it requires him to base his diagnosis on what from the scientific viewpoint are incomplete data—or run the risk of having his entire testimony thrown out. Even where the psychiatrist has made a personal examination, if he admits on cross-examination that his diagnosis rests *in part* on such second or third hand reports, he may be chagrined to hear the judge order his testimony stricken because based on hearsay.
>
> [An] exclusionary rule overlooks the safeguards the law provides: (1) the fact that the expert is an expert in diagnosis and in appraising the value of the statements made to him; (2) the discretion of the trial court to exclude statements not necessary for diagnosis; (3) the opportunity of contradicting

---

[21] *People v Anderson*, 166 Mich App 455, 465; 421 NW2d 200 (1988), lv den 432 Mich 858 (1989); *Thomas v McPherson Community Health Center*, 155 Mich App 700, 709; 400 NW2d 629 (1986); *Swanek v Hutzel Hosp*, 115 Mich App 254, 259-260; 320 NW2d 234 (1982); anno: *Admissibility on issue of sanity of expert opinion based partly on medical, psychological, or hospital records*, 55 ALR3d 551.

by cross-examination and by other witnesses, thus
demolishing the expert's opinion. [Weihofen, Men-
tal Disorder as a Criminal Defense, p 287.]

The Court of Appeals conclusion that the inde-
pendent expert may not base an opinion on histor-
ical information is therefore inconsistent with
MRE 703[22] and with the policy underlying the
rule. *People v Anderson,* 166 Mich App 455; 421
NW2d 200 (1988).[23]

Uncovering the facts and circumstances on
which an expert's opinion is based is essential to
enable other experts to determine whether the
opinions expressed by the witness are correct, and
to contradict them if wrong. Most importantly,
without examination of the foundation of the opin-
ion, the factfinders' evaluation of the relative
value of the opinions offered is necessarily circum-
scribed and the reliability of its ultimate determi-
nation correspondingly compromised.

Simply stated, the "probative value of an opin-
ion of sanity depends on the facts upon which it is
based." *People v Murphy,* 416 Mich 453, 465; 331
NW2d 152 (1982).[24]

---

[22] We do not lightly presume that the Legislature intended a
conflict, calling into question this Court's authority to control practice
and procedure in the courts. Const 1963, art 6, § 5; *Perin v Peuler,*
373 Mich 531, 541; 130 NW2d 4 (1964); *Buscaino v Rhodes,* 385 Mich
474, 478-480; 189 NW2d 202 (1971).

[23] The Court in *Anderson* held that MRE 703 allows an expert's
opinion that a defendant was not mentally ill or insane to be based on
a review of a report filed by the defendant's expert and on consulta-
tion with another rebuttal expert.

[24] Analogous federal law and the federal Rules of Evidence are
consistent with this construction. The extant federal statutes regard-
ing competency to stand trial, 18 USC 4241, and criminal responsibil-
ity, 18 USC 4242, contain provisions similar to the statute at issue. 18
USC 4241(f) provides in relevant part:

A finding of the court that the defendant is mentally compe-
tent to stand trial . . . shall not be admissible as evidence in a
trial for the offense charged.

CONCLUSION

A person qualified to testify as an independent expert may, consistent with the Mental Health Code, the Code of Criminal Procedure, and the Michigan Rules of Evidence, rely on historical data, including information and opinions contained in prior competency evaluations, when forming an opinion regarding a defendant's criminal responsibility. Sections 1028(3) and 20a do not limit the information an independent expert may use as the basis of an opinion regarding criminal responsibility.

We therefore reverse the decision of the Court of Appeals and reinstate the convictions of guilty but mentally ill.

BRICKLEY, RILEY, GRIFFIN, and MALLETT, JJ., concurred with BOYLE, J.

18 USC 4242(a) provides that when the defendant intends to rely on the defense of insanity,

the court shall order that a psychiatric or psychological examination of the defendant be. conducted . . . .

Under 18 USC 4241, it is only the finding of competency to stand trial that is not admissible at the later criminal trial. The federal statutes contain "no absolute bar to the psychiatrist who conducts the competency examination testifying also on the issue of sanity." *People v Garland,* 393 Mich 215, 226-227, and n 7; 224 NW2d 45 (1974) (LEVIN, J., concurring).

Not only may a clinician who examined a defendant regarding competency to stand trial also testify regarding the defendant's sanity at the time of the alleged offense, but under the federal Rules of Evidence, the trial expert may also base his opinion on reports compiled by others. See, e.g., *United States v Bramlet,* 820 F2d 851, 855-856 (CA 7, 1987), cert den 484 US 861 (1987) (an opinion regarding criminal responsibility may be based on reports and observations of others under FRE 703); *United States v Lawson,* 653 F2d 299, 301-302 (CA 7, 1981), cert den 454 US 1150 (1982) (an opinion based in part on reports by others is admissible on an issue of the defendant's sanity); *United States v Phillips,* 515 F Supp 758, 762-763 (ED Ky, 1981) (an expert's opinion is admissible where based in part on nurses' notes and reports of the institution where the defendant was previously hospitalized).

LEVIN, J. (*dissenting*). We read § 1028(3) of the Mental Health Code[1] as designed to protect the accused's Michigan and federal constitutional rights providing that no person shall be compelled in a criminal case to be a witness against himself.[2]

I

The United States Supreme Court has held that statements uttered by a defendant during a competency examination present no Fifth Amendment issue where relied on solely to ensure "that respondent understood the charges against him and was capable of assisting in his defense," but that the Fifth Amendment privilege is implicated where it is sought to rely on such statements during the guilt or penalty phases of a prosecution.[3]

The statute provides that a defendant must make himself available for a competency examination and that he may be committed without a hearing if he fails to do so.[4] The statute further provides that the examining psychiatrist shall consult with defense counsel who shall make himself available for that purpose.[5]

Section 1028(3), in providing that the opinion concerning competency to stand trial may not be admitted as evidence for any purpose in a pending criminal proceeding, except on the issue of competency to stand trial, seeks to protect the accused's right to remain silent and to avoid self-incrimination. This Court has said: "In Michigan, the results

---

[1] MCL 330.2028(3); MSA 14.800(1028)(3).

[2] US Const, Am V; Const 1963, art 1, § 17.

[3] *Estelle v Smith*, 451 US 454, 462, 465; 101 S Ct 1866; 68 L Ed 2d 359 (1981).

[4] MCL 330.2026; MSA 14.800(1026).

[5] MCL 330.2028; MSA 14.800(1028).

of competency examinations may not be used at trial as evidence of a defendant's guilt, obviating Fifth Amendment concerns regarding self-incrimination."[6]

## II

The third sentence of § 1028(3), permitting information gathered in the course of a competency examination that is of historical value to be utilized in the formulation of an opinion in any "subsequent court ordered evaluation," refers to a second or subsequent competency examination, not to an examination respecting criminal responsibility.

No court is empowered to order an accused person to submit to an evaluation concerning his criminal responsibility. To be sure, an accused must, if he wishes to offer expert testimony respecting his criminal responsibility, permit the people's expert witnesses also to examine him, but such an examination is not pursuant to court order. If an accused fails to permit an examination by the people's expert, the people's remedy is to seek to bar the accused from offering expert testimony in support of an insanity defense. The remedy is not to seek or obtain a court order directing the defendant to submit to an examination concerning his criminal responsibility.

## III

Dobben sought to bar Dr. Halpern from relying on his statements during the course of the competency examination in formulating his opinion concerning Dobben's criminal responsibility. His motion was denied. While Dobben's expert witnesses

---

[6] *People v Wright,* 431 Mich 282, 286; 430 NW2d 133 (1988).

may also have relied on Dobben's statements during the competency examination, it appears that they may have been able to render their opinions independently of Dobben's statements during the competency examination; they did not testify until the court had ruled adversely to Dobben.

We would remand to the Court of Appeals to determine whether Dobben waived his statutory and Fifth Amendment privileges when his expert witnesses testified concerning his criminal responsibility, possibly in partial reliance on what he said during the course of the competency examination.[7]

The majority reinstates the defendant's convictions of guilty but mentally ill, thereby ignoring that there are other issues raised by Dobben on appeal in the Court of Appeals, partially dealt with in its opinion, which require remand for further proceedings in the Court of Appeals.

CAVANAGH, C.J., concurred with LEVIN, J.

[7] See *People v Garland*, 393 Mich 215, 232-233; 224 NW2d 45 (1974).